## Case No. 13,004.

### SMITH v. ARNOLD.

### [5 Mason, 414.] 1

Circuit Court, D. Rhode Island.   Nov. Term, 1829.

STATUTE OF FRAUDS — SUFFICIENCY OF MEMORAN-DUM—AUCTION SALE BY ADMINISTRATOR.

1. Where a sale was made by an administrator, at public auction, of the real estate of his intestate, under a license of the proper court, to pay debts, and he acted as auctioneer at the sale; it was *held*, that a memorandum by him of the sale at the time, was not binding on the purchaser, who bid at the sale, and that he was not his agent so as to make the sale a valid contract under the statute of frauds of Rhode Island.

[Cited in Camden v. Mayhew, 129 U. S. 85, 9 Sup. Ct. 249; Pewabic Min. Co. v. Mason, 145 U. S. 362, 12 Sup. Ct. 890.]

[Cited in Barron v. Mullin, 21 Minn. 376; Bent v. Cobb, 9 Gray, 399; Hutton v. Williams, 35 Ala. 503; McGuinness v. Whalen, 16 R. I. 560.]

2. No memorandum under the statute of frauds is sufficient, unless it state the price and material terms of the contract for the sale of lands.

[3. Cited in Blossom v. Milwaukee & C. R. Co., 3 Wall. (70 U. S.) 207, and Blackburn v. Selma R. Co., 3 Fed. 695, to the point that a sale made under the direction of a court of chancery is not final until a report is made to the court, and it is approved and confirmed. The purchaser becomes a party to the suit and is subject to the orders of the court.]

[4. Cited in Bamber v. Savage, 52 Wis. 113, 8 N. W. 609; Capehart v. Hale, 6 W. Va. 551; Gwathney v. Cason, 74 N. C. 5; Horton v. McCarty, 53 Me. 397; Walker v. Herring, 21 Grat. 682,—to the point that the memorandum of the auctioneer, in order to bind the purchaser, must be made contemporaneous with the sale.]

Assumpsit [by Dutee Smith, administrator of Russell Aldridge, against John Arnold]. The declaration was for the price of a certain farm sold by the plaintiff, as administrator of Russell Aldridge, to the defendant, the defendant refusing to complete the purchase. Plea, non-assumpsit.

At the trial it appeared, that the plaintiff was duly licensed as administrator, by the supreme court of Rhode Island, to sell the land in controversy; and that it was duly advertised for sale, at public auction, in May, 1824. The administrator acted as auctioneer at the sale, (administrators being exempted from the prohibitions of the statute of Rhode Island as to public sales,) and the defendant being the highest bidder at the sale, the premises were struck off to him. The advertisement was of all the right and title of the intestate in the premises. The administrator wrote down, at the time of the sale, upon a paper containing the conditions

1 [Reported by William P. Mason, Esq.]

of the sale, the following memorandum: "The home farm of said Aldrich, called 140 acres more or less, said Aldrich's title in the same struck off to John Arnold, highest bidder, for $1705,50." The memorandum was without any signature. But below it there was another memorandum signed by the administrator verifying it, which appeared to have been made at a different time and with different ink. Some time after the sale in September, 1824, the court of probate, upon the application of the widow of the intestate, set off her dower in his estate, and assigned a considerable part of the premises for that purpose. The defendant, in October, 1824, prayed an appeal to the supreme court from the decree for dower, and in his petition alleged, that he was "a creditor to said R. Aldrich's estate, and a purchaser at auction of the said tract or farm." The condition of his bond, given on the granting of the appeal, stated, that he was interested in the said estate. The memorandum and a record copy of the petition and bond were offered as a sufficient memorandum, within the statute of frauds, to charge the defendant as purchaser.

Mr. Whipple, for defendant, objected to the evidence as inadmissible, and argued his objection at large, and cited 2 Camp. 203; 3 Burrows, 1921; 1 W. Bl. 509; 2 Taunt. 38; 4 Taunt. 409; 4 Johns. Ch. 659; 14 Johns. 484; 3 Ves. & B. 57; 1 Jac. & W. 350; 4 Johns. Ch. 663, 669; 9 Ves. 251. On the point, as to the inadmissibility of the evidence of the petition and bond, as evidence of the contract per se, he cited Prec. Ch. 560; 2 Schoales & L. 22; 1 Atk. 12; 1 Brown, Parl. Cas. 345; 1 Ves. Jr. 326; 10 Mass. 230; 15 Ves. 516; 1 Hen. & M. 166; 2 Desaus. Eq. 188; 1 Johns. Ch. 273.

Tillinghast & Searle argued at large, è contra, and cited on the point, that the memorandum was sufficient, 7 Ves. 341; 9 Ves. 234; 13 Ves. 341; 2 Johns. 248; 8 Johns. 520. They also contended, that this was a judicial sale, and so out of the statute of frauds; and cited 12 Ves. 471.

The arguments are not given at large, as they are fully considered in the opinion of the court.

STORY, Circuit Justice. The question here is, whether there is a sufficient memorandum, within the statute of frauds of Rhode Island (Rev. Laws 1822, p. 366), to bind the defendant as purchaser of the land. The statute is the same in substance with the English statute of frauds of 29 Car. II. c. 3, § 4. The words are, "No action shall be brought, whereby to charge, &c. &c. any person upon any contract for the sale of lands, &c. &c. unless the promise or agreement, upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person, by him thereto lawfully authorized."

I will first consider, whether the petition and bond in the court of probate contain any sufficient proof of the contract now sued on; or contain any reference to the memorandum made by the administrator, acting as auctioneer at the sale, so as to amount to an adoption or ratification of the memorandum. Now, taking the probate proceedings per se, it is very clear, that they contain no sufficient statement of the contract to be binding on the party. The language of the petition is, that the petitioner is a "creditor and purchaser at auction of the farm." It is not said of whom he purchased, at what sale, or at what time; and the court cannot intend, that it must necessarily refer to the sale by the administrator. But what is fatal is, that it contains no statement of any price or consideration of the purchase; and no memorandum is sufficient within the statute, which does not contain in substance the essential terms of the contract. How can that be said to be a memorandum of a contract, which is wholly silent as to the consideration and terms of the contract? which merely states, that there was a contract or purchase; but leaves all in darkness as to the nature and extent of it? The probate papers, therefore, as a memorandum, may be entirely laid aside. Then, do they contain any certain reference to the memorandum of the administrator, so as to admit and adopt it? There is not a word of reference to any memorandum whatsoever. It is not even said, that the purchase was of the administrator; and unless there were some certain reference so clear as to admit of no doubt, there is no pretence to say, that the court is at liberty to incorporate the memorandum into, and make it a part of, the petition, as the written admission of the defendant. We may, then, lay aside any further consideration of these proceedings. They stand alone, and are of themselves no proof of any contract binding on the defendant.

Then is the memorandum of the administrator sufficient? The memorandum is at the bottom of the conditions of sale, and so far as respects the defendant, it is in the following words: "Struck off to John Arnold, highest bidder, for $1705,50." There is now found at the bottom of the paper a signature of the administrator's name; but it is almost certain, that it was not made at the time when the memorandum was written, for it is in a very different ink, and apparently of more recent date. So that the memorandum is not brought within the terms of the statute. It is not signed by the party to be charged therewith, or by his agent thereunto lawfully authorized.

But the important question is, whether, under the circumstances of the present case, the administrator can be considered as the agent of the purchaser, authorized by him to make and sign the memorandum. If he can, then the defendant is bound, for the memorandum sufficiently sets forth the terms of the con-

tract. After much fluctuation and doubt, it has at last been settled in England, that an auctioneer is to be deemed the agent of both parties in respect to the sale, and authorized to make a memorandum for both. Lord Mansfield, in Simon v. Motivos, 3 Burrows, 1921, began that doctrine; and it has, after very great hesitation, been followed. It appears to me, speaking with all due respect, to have done much to destroy the salutary operation of the statute of frauds. By the common law, if an agent is to execute a deed for his principal, his authority must be of as high a nature. It must be by deed. By analogy it would have seemed convenient, if not indispensable, to have held, that where the statute, to prevent frauds and perjuries, required a contract to be in writing, if executed by an agent, his authority should be in writing also. That the auctioneer is agent of the seller is clear; that he is also agent of the buyer is not so very clear; and is a conclusion founded on somewhat artificial reasoning. But the doctrine is now established; and the best reason in support of it is, that he is deemed a disinterested person, having no motive to misstate the bargain, and enjoying equally the confidence of both parties. The agency is presumed to be given to him on this account by the purchasers, trusting to his integrity and disinterestedness. But the case is very different, where the auctioneer is the vendor, and is himself the very party in interest, with whom the contract is made. There can be no reasonable presumption from the mere act of bidding, that the purchaser means to trust the other party with settling, by his own memorandum, the whole terms of the contract. It would be a very extraordinary position, at war with the ordinary care and caution of men, to put into the hands of the other party the unlimited power to settle all the terms of an important contract by his own memorandum. And this would be the result of the doctrine contended for. For if .the mere act of bidding, being proved by parol, would be sufficient to create a virtual agency for the bidder, then the party would be bound, though he never saw the memorandum; and when the memorandum was once reduced to writing, no parol evidence could at law be admissible to show, that the terms were mistaken or varied; for the memorandum would be the proper evidence of the contract, though made by the very party in interest. It is said, that here the administrator is not the party in interest; and that he has a mere power or license to sell. But he is the party, who alone is competent to make the contract. The price must be paid to him; and non constat, to what extent, as administrator, he may have an interest in the proceeds, either as creditor, or for services. He stands in the same situation as a trustee of an estate, selling for the use of his cestui que trust. He could not be a witness to prove the contract. And yet, upon the doctrine now asserted, his memorandum is better than any testimony. In a legal point of view he is the real party to the contract, and is alone authorized to sue upon it. And whether he has a beneficial interest in it, or not, is immaterial. He is the legal party in interest in the price and performance of the contract.

The case, then, is not distinguishable from that of any other vendor, who acts as auctioneer. If there were no authority upon the subject, we should say, upon principle, that a vendor was not to be presumed to be the agent of the purchaser for the purpose of signing the contract for him. That it would be a presumption against common sense to suppose, that the party could act both as buyer and seller at the same time, and that the purchaser meant to surrender himself into the hands of a party in interest. If there were an express authority given for such a purpose, that might be another thing. But it ought not to be presumed from so equivocal an act as bidding at a public sale, and having the property struck off at the bid. There are cases, where courts of law have interposed limitations upon the construction of the statute, which are not found in its words. It is, for instance, decided, that the memorandum of the auctioneer, to bind the purchaser, must be contemporaneous with the sale. It cannot be made afterwards. Now, the statute does not say, that the memorandum in writing shall be contemporaneous with the sale. But the courts, upon principles of just policy, have bound up the words by this restriction, in order to prevent men from being ensnared by contracts subsequently reduced to writing by agents. See 13 Ves. 456. The same reasoning applies to the present case, and with far greater force. But there is an authority directly in point, and even stronger, than the case before the court. It is Wright v. Dannah, 2 Camp. 203. There, the vendor reduced the contract to writing, and showed it to the vendee, who corrected it and approved it. But it was held by Lord Ellenborough, that the memorandum was not sufficient within the statute of frauds. On that occasion he said, "The agent must be some third party, and could not be the other contracting party." Now there, the very paper was assented to by the party, after it had been read; but the court thought it dangerous to allow the doctrine, that the mere assent of the vendee to the contract, as drawn up by the vendor, should be deemed by implication to make him an agent to bind the vendee by the memorandum. It was quite consistent with the facts, that he should be satisfied, that it was truly stated, and yet that he should not adopt it as his own act, or the act of his agent to bind him.

But it is said, that this is the case of a judicial sale, and such sales have been held not to be within the statute of frauds. The cases alluded to are sales of a very different sort from that before the court. In sales directed by the court of chancery, the whole business is transacted by a public officer under the guidance and superintendence of the court it-

0

self. Even after the sale is made, it is not final, until a report is made to the court, and it is approved and confirmed. Either party may object to the report, and the purchaser himself, who becomes a party to the sale, may appear before the court, and, if any mistake has occurred, may have it corrected. He, therefore, becomes a party in interest; and may represent and defend his own interests; and if he acquiesces in the report, he is deemed to adopt it, and is bound by the decree of the court confirming the sale. He may be compelled, by process of the court, to comply with the terms of the contract. So that the whole proceedings, from the beginning to the end, are under the guidance and direction of the court; and the case does not fall within the mischiefs supposed by the statute of frauds. In the case of an administrator, the authority to sell is, indeed, granted by a court of law. But the court, when it has once authorized the administrator to sell, is functus officio. The proceedings of the administrator never come before the court for examination or confirmation. They are mere matters in pais, over which the court has no control. The administrator is merely accountable to the court of probate for the proceeds acquired by the sale, in the same manner as for any other assets. But whether he has acted regularly or irregularly in the sale is not matter, into which there is any inquiry by the court granting the license, or by the court of probate having jurisdiction over the administration of the estate. So that the present case is not a judicial sale in any just sense; but it is the execution of a ministerial authority. The sale is not the act of the court, but of the administrator.

For these reasons we are of opinion, that the evidence is inadmissible. Plaintiff discontinued.