WILLIAM H. HORTON *versus* WILLIAM McCARTY.

The mere writing of the price and the name of the purchaser of real estate sold at auction, by the auctioneer, upon a slip of paper not connected with any other papers, is not a sufficient signing within the statute of frauds.

To bind the purchaser, a memorandum, containing all of the essential terms of the contract, must be made and signed by the auctioneer at the time of the sale and before the termination of the proceedings.

It is not sufficient for the auctioneer to enter, in the absence of the purchaser, the sale on his book at his office upon his return from the place of sale, he having no sufficient memorandum of the sale, made at the time, from which to make the entry.

The extent of the agency of the auctioneer.

ON REPORT from *Nisi Prius,* APPLETON, C. J., presiding. The facts appear in the opinion.

*F. A. Wilson,* for the plaintiff.

The memorandum is sufficient in form. *O'Donnell* v. *Leeman,* 43 Maine, 158; Greenl. on Ev., vol. 1, § 269. Auctioneer agent of both parties. *O'Donnell* v. *Leeman, supra.* A memorandum commenced at the time and place of sale and extended afterwards on the books of the auctioneer is sufficient, if done as soon as practicable, and the latter is regarded as the original entry. *Episcopal Church* v. *Seavey,* Riley's Ch., 156.

*Charles Hamlin,* for the defendant.

KENT, J. — The question in this case is, whether there has been a sufficient compliance with the requirements of the statute of frauds, in the matter of a written memorandum, signed by the party to be charged. The sale was made at auction. It is now fully established law that sales at auction of real estate are within this statute. It is also well settled that the auctioneer is the agent for both parties to a certain extent. He is the agent of the seller in selling, and the agent of the purchaser to perfect the bargain by signing a proper memorandum at a proper time.

Horton *v.* McCarty.

These points have, in former days, elicited much discussion and many doubts, but are now too well settled to be discussed.

The real question, in the case before us, is, whether the auctioneer did in fact bind the defendant, by a sufficient memorandum, duly and legally signed by him, for the purchaser. It is admitted that there was a regular sale by the auctioneer, that the lot of land offered was struck off to defendant, he being the highest bidder, and that a deed was duly tendered. But the defendant insists that there has been no contract signed by him, or by his agent, the auctioneer.

The memorandum, which the auctioneer shows in his book of sales of real estate at auction, is undoubtedly sufficient, if seasonably made, to charge the defendant. It contains a description of the premises, the time and place of sale, the name of the seller, the terms, and the name of the defendant as purchaser, and is signed by the auctioneer.

The objection is that this was not made at the time and place of sale, or as a part of the transaction, whilst the parties were present. What was done on the premises? The auctioneer was a witness, and the substance of his testimony is, that he *presumes* he wrote down the *name* of the purchaser and the price on a piece of paper, immediately, on the premises, that he does not know where that paper is, nor can he produce it.

He cannot testify to the fact from any distinct recollection, but he *infers* that he did so, because such was his usual custom. There are two objections to giving effect to this testimony. The first is, that the proof of the fact is not satisfactory; and the second is, that a mere writing down on a slip of paper of the name of the purchaser and the price, the paper containing nothing else and connected with no other papers, is not a signing of a contract, within the meaning of the statute. The rule of law has been sufficiently relaxed by the decisions, but it is not entirely dispensed with. The general rule is, " that the paper or book

signed must contain the essential terms of the contract, with such a degree of certainty that it may be understood, without recourse to parol testimony." Brown on Statute of Frauds, § 347. It is clear that the writing of a name and a sum on a slip of paper, which contains no reference to the sale and its terms, or to the description of the property, is not sufficient. *Freeport* v. *Bartol*, 3 Greenl., 340 ; *Morton* v. *Deane*, 13 Met., 35.

The question then is reduced to this :—Is it sufficient if the auctioneer enters the sale on his book at his office, soon after, and on his return from the sale, in the absence of the defendant, he having no sufficient memorandum of the sale made at the time, from which to make his entry?

This must depend upon the extent and continuance of the agency of the auctioneer. Does that extend beyond the time and place of sale, or is it limited, so far as the purchaser is concerned, to such time and place? It is undoubtedly true, that, as a general rule, it is not necessary that the signing should be at the moment of making the contract, *when the parties are acting for themselves.* It may be done at any time before action brought. And we see no good reason why the same rule should not apply where the signing is by an agent fully authorized to act at the time of signing. *Williams* v. *Bacon*, 2 Gray, 387.

How far, then, does this agency for the purchaser extend? There is a manifest distinction between the agency for the seller and that for the purchaser. The auctioneer is selected and appointed by the seller, and the purchaser has no voice in the matter. He is undoubtedly the agent of the vendor from the inception to the final consummation of the contract, and the full performance of its terms. His agency for the purchaser does not commence until the sale has been opened and he becomes the highest bidder. Although it is somewhat anomalous to make the agent of one party who desires to sell, the agent of the other who appears to buy *of such agent*, yet it has been decided, after much controversy and many doubts, that he is such agent to a certain extent, and

for a certain time, but not to the same extent as he is agent for the seller.

In the case of *Gill* v. *Bicknell*, 2 Cush., 355, SHAW, C. J., thus states the rule and the reasons therefor. "It is now well settled, by the authorities, that a sale of real estate at auction, where the name of the bidder is entered by the auctioneer, or by his clerk, under his direction, *on the spot*, and such entry is so connected with the subject and terms of the sale as to make part of the memorandum, is a contract in writing, so as to take the case out of the statute of frauds.

" The true reason probably is, that a sale at auction, being open and visible and in presence of witnesses, either competitors or persons present and closely watching the proceedings, there is less danger of fraud or perjury in proving the making and terms of the contract, and so the main reason for requiring a memorandum in writing does not exist. The technical ground is that the purchaser, by the very act of bidding, connected with the usage and practice of auction sales, loudly and notoriously calls on the auctioneer or his clerk *to put down his name* as the bidder, and thus confers an authority on the auctioneer or his clerk to sign his name, and this is the whole extent of his authority."

To the same effect is the case of *Cleaves* v. *Foss*, 4 Greenl., 1, where it is said :—" Whoever bids does, in effect, authorize the auctioneer to sign his name as purchaser, if no other person bids a higher sum." *O'Donnell* v. *Leeman*, 43 Maine, 158. "A memorandum signed by an auctioneer *at time of sale* is sufficient."

Mr. Justice STORY discusses the questions arising under sales at auction, in *Smith* v. *Arnold*, 5 Mason, 414. On the point we are now considering, he says, — " It has been decided that the memorandum of the auctioneer to bind the *purchaser* must be *cotemporaneous* with the sale. It cannot be made afterwards. The Court, on principles of just policy, have bound up the words of this restriction in order to

prevent men from being ensnared by contracts subsequently reduced to writing by agents,"

Although these latter words may seem to be too general, and to cover all cases of unlimited agency, yet, when applied, as the Court evidently intended they should be, to the point in question, they are just and forcible.

The auctioneer is primarily and actively the special agent of the party selling. His feelings, his sympathies and his interest all unite to make him anxious to sell at the highest possible price, and to hold the bidder to the performance of the contract. In case of any dispute or difference, he would, although an honest man, naturally incline to the side of his employer, against a person with whom he has no other relation than that of a bidder for the property which he, as agent for the owner, has offered at public sale. The law, therefore, when it allows him to act in the nearly unprecedented relation of agent for both parties, imposes a qualification not applied to the usual cases of agency, and requires that the single act for which, almost from necessity, he is authorized to perform for the buyer, shall be done at the time of sale, and before the termination of the proceedings. This seems to us a reasonable and necessary limitation of this special agency. Without it, there would be danger of injustice and partiality.

The point has been directly decided in England. In the case of *Mews* v. *Carr*, Harls. & Norman, 484, (48 E. L. & Eq., 358,) it was held, that, although "the auctioneer *at the sale* is agent for both seller and buyer, so as to bind them by his signature, yet the moment the sale is over the same principle does not apply, and the auctioneer is no longer the agent of both parties, but of the seller only, and the signature of the seller or his agent cannot bind the buyer." See also *Buckmaster* v. *Horrop*, 13 Vesey, 456.

According to the agreement of the parties, the judgment must be                    *Plaintiff nonsuit.*

APPLETON, C. J., CUTTING, DICKERSON, BARROWS and TAPLEY, JJ., concurred.