**WALTER M. BALLARD CO. v. PEYSER et al.**

**No. 6740.**

United States Court of Appeals for the District of Columbia.

Argued Jan. 7, 1937.

Decided April 12, 1937.

George E. Edlin and Theodore D. Peyser, both of Washington, D. C., for appellant.

Chas. A. Douglas, Hugh H. Obear, Jo V. Morgan, and Edmund D. Campbell, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeals from (1) an order in the Supreme Court of the District of Columbia (now District Court of the United States for the District of Columbia) dismissing the petition of appellant (intervener below) to enjoin the sale of a note held by appellees as receivers of Wardman Real Estate Properties, Inc. (defendant below), and secured by a chattel trust, and (2) from the order confirming the sale of the note.

The material facts are substantially as follows: In 1931 appellant Ballard Company held a conditional sale lien on furniture located in the Hay-Adams House, a hotel in this District, which lien was superior to a chattel trust lien on the same furniture held by the Wardman Real Estate Properties, Inc. (hereinafter called the Real Estate Company). On May 2d of that year the two companies entered into a written agreement "pertaining to disposition of liens" held by the Ballard Company, and "in order to adjust the difference and claims of the respective parties."

The "agreed valuation of the furniture" was fixed by the contract at $50,000, and the

interest of the Ballard Company therein was determined to be 12 per cent., namely $6,000, which amount the Real Estate Company agreed to pay and did pay immediately. It was further agreed that the Real Estate Company should take such steps as it "may be advised to sell, repossess or otherwise dispose of the furniture," and that in the event the Real Estate Company "should sell or otherwise dispose of said furniture * * * by sale, public or private, release of liens or otherwise, so that the said furniture * * * shall be acquired by any person * * * for a sum in excess of Fifty Thousand Dollars," the Real Estate Company would pay the Ballard Company "a further sum equivalent to 12% of such sum in excess" of $50,000, after deducting expenses; and that should the Real Estate Company "receive any sum on account of the said obligation secured by the aforesaid liens in excess of" $50,000, it would pay to the Ballard Company "a further sum equivalent to 12% of such excess." Finally, it was agreed that the Ballard Company would "execute such assignment or assignments, release or releases" of its "liens under said conditional bills of sale as may be necessary" and as the Real Estate Company "may desire" to perfect its right and title.

The maker of the chattel trust note held by the Real Estate Company assigned to that company the right to rent the furniture, the rental to be applied on the indebtedness represented by the note.

On July 28, 1931, appellees qualified in the court below as receivers for the Real Estate Company in equity cause No. 53,-180, Compton v. Wardman Real Estate Properties, Inc., and on April 19, 1933, the Ballard Company filed its petition to intervene therein, setting out the terms of the contract of May 2, 1931, which petition was granted on May 19, 1933.

On October 25, 1935, the receivers petitioned for authority to dispose of the receivership assets. Notice of this petition was not served on the intervener Ballard Company.

On November 15, 1935, the court appointed appraisers to report on the value of the assets, including "Unit 6. Lien of Receivers represented by note secured by chattel deed of trust on furniture and equipment in Hay-Adams House," and authorized the receivers, after the filing of the appraisers' report, to sell the units at public sale.

On December 23, 1935, the appraisers filed their report, Unit 6 being appraised at $17,600.

Thereupon the receivers advertised the sale of the units at public auction to be held at 3 p. m. on January 23, 1936.

On January 20, 1936, the Ballard Company "had actual notice of the proposed sale," and on January 23d, at 2:15 p. m. it filed a petition averring that it had not been advised of any of the proceedings authorizing the sale of the note; that its attention had been called to the matter "only within the last day or two"; that the sale of the note would be a direct violation of the contract of May 2, 1931; that "the receivers cannot realize a true value or the greatest amount from said furniture and equipment if they are permitted to sell the said note and not make any effort to dispose of the furniture and the equipment itself"; and that it would be damaged thereby. The petition prayed for an order temporarily enjoining the sale of the note as well as a permanent injunction, and further prayed that the receivers be required to sell the furniture under the chattel deed of trust. The Ballard Company, however, did not press its prayer for a temporary restraining order by formally applying for such order in advance of the sale. The receivers proceeded with the sale.

Thereafter, on January 31st, the receivers reported that on the sale of Unit 6 (the note here involved) "there was spirited bidding by four separate bidders at prices starting at $5,000 and ending at $16,100, the highest bid offered for said Unit. All of the units cried were sold to the highest bidder, subject, however, to confirmation by the court after Order Nisi."

Following the sale, the receivers on February 11th, answered the petition for injunction; denied that the sale of the note would violate the contract, and averred that the rentals of the furniture aggregating $33,925 had been paid to the receivers; that the receivers had offered to appear in court on any request which the Ballard Company "might wish to make for restraining order prior to three o'clock p. m., the time set for said sale; but counsel for the receivers were advised by counsel for the Walter M. Ballard Company that no application for a restraining order would be presented." The answer further averred that the receivers thereupon proceeded with the sale of the note "in view of the fact that the sale of said note had been advertised for more than

thirty days, and that there were, to the knowledge of the receivers, at least four separate bidders ready to compete for the purchase of said note by bidding at said sale." The answer also averred that in their opinion "the best net price for the interest of the receivers and of the petitioner in the furniture * * * can be obtained by a sale of the note * * * rather than by a foreclosure and sale of said furniture and equipment itself"; that the receivers wished to realize "the highest possible price for the interest of the receivership estate in said equipment and furniture" and to that end they had suggested to the Ballard Company that if dissatisfied with the price obtained for the note ($16,100), the Ballard Company should offer to the court a higher price for the note so that if the original sale price be deemed inadequate the sale might be set aside and the note sold for a higher price to the Ballard Company or such other person as might bid therefor; that the Ballard Company declined to make any bid for the note and the receivers had been unable to obtain any bid therefor higher than $16,100—the sum bid at the receivers' sale; that if the sale of the note be set aside and foreclosure ordered in lieu thereof, the net sum realized from the foreclosure sale may be substantially less than the sum already bid for the note, $16,100, which "bears a fairly close relation to the appraised value of $17,600."

On February 14th, an order nisi was entered confirming the sale unless cause to the contrary be shown before March 16, 1936.

On February 17, 1936, the court, after hearing on the petition to enjoin the sale of the note and the answer thereto, denied the injunction and dismissed the petition, the order reciting: "The Walter M. Ballard Company having declined to make any bid for the said note above the sum of $16,100 heretofore offered therefor, and having declined to guarantee to the Receivers any minimum bid for said furniture and equipment in the event the Receivers should be directed to foreclose and sell the same at public auction under the said deed of trust." The Ballard Company excepted to this ruling, and perfected its appeal.

Thereafter, on March 14th, the Ballard Company filed objections to the confirmation of the sale of Unit 6, alleging that under the contract the receivers were bound to sell the furniture and that the sale of the note did not comply with the contract; that $16,100, "the price offered and the sub-

ject of ratification" by the court, "is greatly inadequate"; and that a new appraisal of the furniture and sale thereof is justified.

On March 20th the court overruled the objections and confirmed the sale, the order reciting:—the Ballard Company "having declined in open court to make any bid for the said note above the sum of $16,100 heretofore offered therefor, and having declined to guarantee the receivers any minimum bid for said furniture and equipment in the event the receivers should be directed to foreclose and sell the same at public auction under the said deed of trust." The Ballard Company excepted thereto and appealed. Supersedeas bond of $18,000 was not posted.

Appellant contends, first, that "the authority of the receivers to sell should have been revoked because of their failure to give notice in accordance with order of Court"; second, that "the court was without authority to impose conditions upon appellant outside of the contract in order that appellant may secure a direct sale of the furniture and equipment rather than a sale of the chattel deed of trust note;" and, third, that "the sale of the chattel deed of trust note was not a compliance with the contract."

In Pewabic Mining Company v. Mason, 145 U.S. 349, 12 S.Ct. 887, 890, 36 L.Ed. 732, the question involved was whether a master's sale should stand, and the court quoted with approval from Smith v. Arnold, Fed.Cas. No. 13,004, 5 Mason, 414, 420, in which Judge Story said: "In sales directed by the court of chancery the whole business is transacted by a public officer, under the guidance and superintendence of the court itself. Even after the sale is made, it is not final until a report is made to the court, and it is approved and confirmed." The court further observed that "it may be stated generally that there is a measure of discretion in a court of equity, both as to the manner and conditions of such a sale, as well as to ordering or refusing a resale. The chancellor will always make such provisions for notice and other conditions as will, in his judgment, best protect the rights of all interested, and make the sale most profitable to all; and after a sale has once been made, he will, certainly before confirmation, see that no wrong has been accomplished in and by the manner in which it was conducted. Yet the purpose of the law is that the sale shall be final; and to insure reliance upon such sales, and

induce biddings, it is essential that no sale be set aside for trifling reasons, or on account of matters which ought to have been attended to by the complaining party prior thereto. And in this respect regard may properly be had to all that has transpired before, for the conduct of the parties, their acts and omissions, may largely interpret their action at the time of the sale. In order, therefore, to understand fully the merits of these present appeals, we must notice the course of the litigation and the conduct of the parties prior to the sale."

In the light of the foregoing principles, we will consider the case here presented.

■ First. In our view appellant was not prejudiced by failure of the receivers to give it actual notice of their petition for authority to sell the note. On January 20th it had actual notice of the sale to be held on January 23d, at 3 p. m. At 2:45 p. m. on the day of the scheduled sale it filed its petition to enjoin, but did not avail itself of the receivers' offer to appear before the court prior to 3 p. m. to press its prayer for a temporary restraining order; on the contrary, it advised the receivers that no such application would be presented. Furthermore, after the order nisi, of which it had notice, it had a month within which to present objections to confirmation. It filed its objections within that period. Objections which it might have urged had it been given notice originally of the petition to sell could have been presented before confirmation. In our opinion appellant had full opportunity to protect its rights, and was not harmed by lack of actual notice.

■ Second. Under the facts of this case the sale of the note was equivalent to a sale of the furniture. It is clear that the parties to the contract contemplated that the Real Estate Company should have complete control over the disposition of the furniture (appellant in its brief admits that "the Receivers had full and complete control of the property involved"). It is apparent that the parties also contemplated that the Real Estate Company would be under no restriction in its method of disposition of the furniture. Foreclosure by public sale under the deed of trust was not the only meth-

od of disposition agreed upon by the parties, for "sale, public or private," was specifically authorized. In addition, disposition of the furniture "by release of liens or otherwise" was authorized. The lien of the Real Estate Company was represented by the note. This lien was released by the sale of the note. Since equity looks at substance and not form, it is clear that the sale of the note was in effect a sale of the furniture. The contract fixed no minimum sum for which the furniture might be sold, and if sold for $50,000 or less the Ballard Company would receive nothing. The value of the furniture as of the date of the contract was $50,000. Appellant's interest of 12 per cent. was fully satisfied when it was paid $6,000. Its share in any sum in excess of $50,000 was wholly speculative, and in the nature of a bonus. If the Real Estate Company profited beyond $50,000, appellant would be entitled to participate in such profits. But the Real Estate Company has not profited beyond that amount. It received rentals amounting to $33,925 and the amount bid for the note, $16,100—totaling $50,025, or approximately the amount of the "agreed valuation of the furniture."

■ Appellant objected to the confirmation on the ground that the price was "greatly inadequate." Appellant's petition to enjoin and its objections to confirmation do not allege bad faith, nor aver facts sufficient to show that the actual value of the furniture at the time of the sale of the note was greater than or out of proportion to the appraised value. In considering objections to confirmation of such a sale mere inadequacy of price is not sufficient to justify setting it aside, "unless * * * so great as to shock the conscience." Graffam v. Burgess, 117 U.S. 180, 191, 6 S.Ct. 686, 692, 29 L.Ed. 839; Pewabic Mining Co. v. Mason, 145 U.S. 349, 367, 12 S.Ct. 887, 36 L.Ed. 732. Appellant made no such showing. Upon the whole record, we must conclude that the orders of the lower court should be affirmed.

Affirmed, with costs.

Affirmed.

STEPHENS, Associate Justice, took no part in the consideration or decision of this case.