HENRY WHITTED, Guardian vs. HENRY K. NASH *et al.*

1. If a simple contract creditor receives payment of the executor, a bond creditor cannot awterwards, either at law or in equity, compel the simple contract creditor to refund, for both are creditors, and the creditor first paid may with good conscience retain the money, and leave the bond-creditor to his action as for a *devastavit.*

2. Nor is this principle varied by the receipt of property in saistfaction instead of money; *Provided* the property is taken at a full price. *bona fide* and without notice that the executor is contriving to defeat the priority of the bond creditor.

3. CASE.—The daughter of a decedent being very solicitous to cause his debts to be paid on being assured by the executor that her own and his [the executors] debts are the only ones oustanding, buys from the executor certain property, and executes her notes to certain persons, creditors of the executor, and it afterwards appears that the testator owed the other persons; *Held,* that these facts warrant a reccision of the transaction.

4. When a pleading shows that parties other than those of record, have an important interest in the decision of the cause, the omission to set out their names is an inexcusable error as a complete decree, cannot be made without their presence before the Court, and the Court cannot see under the general phrase "certain parties" who they are.

5. In the case above stated, our Courts having refused to adopt the doctrine of the English Courts by which a purchaser from a fiducian, is compelled to see to the application of the purchase money—had the purchase money been paid the purchaser would have been protected in her title, but as the purchase money has not been paid, the fund will be arrested and applied in a due course of administration.

This was a civil action tried before His Honor Judge Tourgee and a jury, at Fall Term 1871, of Orange Superior Court.

The facts as shown by the record are these :

H. K. Nash, Edmund Strudwick and the late Judge Nash executed a note to the plaintiff as guardian ; that afterwards Judge Nash died testate, leaving said Strudwick his executor ;

that after his death a note in renewal was executed by H. K. Nash and Strudwick, and also signed by Strudwick as executor; on an issue to the jury it was found that the plaintiff had never accepted the note offered in renewal; by the will of Judge Nash, his executor was authorized to sell his real estate, and in pursuance of this authority the executor on the 15th of February, 1867, sold to Miss Sallie K. Nash, daughter of the testator, the residence in Hillsboro' and the "coal field" lands on Deep River, and executed deeds therefor; the price of the residence was $3,550, and the coal fields $4,015; that Miss Nash did not desire to purchase the coal-fields, and did so merely because Dr. Strudwick the executor had informed her that the only debts remaining due by the testator were two, viz: one due to herself of $3,550 and one due to himself of $4,015, and that it would be necessary to pay the debt due to him before that due her could be reached, and that acting on this assurance, she consented in order to save the homestead, to purchase als the coal-fields.

The homestead was to pay her debt, her debt was a simple contract debt, as in the main was that of the executor, in payment of the coal-fields Miss Nash on the 1st of April, 1867, executed her notes to " certain persons," who were creditors of the said Strudwick to whom he had assigned by deed in trust his claim against the estate of his testator; the jury on issues found the purchase of the homestead and the coal-fields to be a single transaction; in 1866, Strudwick became insolvent, and H. K. Nash was also insolvent, that the only property belonging to the testator was the property so conveyed by his executor, and a claim for the use and occupation of the homestead after his death by Miss Nash.

Upon the finding of the issues as before stated. His Honor being of the opinion with Miss Nash, rendered judgment accordingly, and the plaintiff appealed.

*J. W. Graham* for the appellant.

Miss Nash was informed that the debts must be paid before she could get good title. If she chose to rely upon the statements of the executor she must discharge any other debt not mentioned. She became paymaster and must carry out her bargain. Much less than actual knowledge is sufficient, if anything appears which is calculated to excite attention, the party is put upon inquiry and is affected with the knowledge of all that diligent inquiry would have brought to light. *Bunting* v. *Ricks*, 2 D. & B. Eq., 130. *Smith* v. *Fortescue*, Busb. Eq., 127.

II. Whitted's position may be assimilated to that of a creditor secured by a deed in trust—in the first class ; Strudwick the *second ;* Miss Nash the *third.*

He has a right to pursue the property and is not affected by the equities, which may exist between 2nd and 3rd class creditors, and this right cannot be divested by a sale to creditors of the 2nd class they are entitled to such assets, if their debtor was, they cannot take the assets not belonging to their debtor.

[Mr. Graham in an able and extended argument exhausts the subject—the above is a mere condensation of the main points.]

*Phillips* & *Merrimon* for the appellee.

PEARSON, C. J. If a *simple contract* creditor receives pay ment of the executor, a *bond* creditor cannot afterwards, either at law or in equity compel the contract creditor to refund, for although the bond debt is of higher dignity in the administration of *legal* assets, both are creditors, and the creditor who is first paid may in good conscience retain the money, and leave the bond creditor to his remedy against the executors for a *devastavit.*

It is equally clear that if the simple contract creditor accepts of the executor, property of the estate of the testator, in satis-

faction of the debt, it falls within the same principle, provided the property is taken at a full price, *bona fide*, and without. notice that the executor is contriving to defeat the priority of the bond creditor.

In our case, the property was accepted in satisfaction of the debt, at full price, *bona fide* and without notice, so it comes within the principle above stated.

In regard to the rent, or more properly the charge for use and occupation, the fact is not distinctly stated, but we take it there was no agreement about it. Miss Nash continued to occupy the residence after the death of her mother, with a "general understanding" as it is called in the case, that the use and occupation was to go against the interest accruing upon her debt, and that this matter was included in the arrangement in reference to the purchase of the residence, and of the "coalfield land" mentioned in the pleadings.

If the transaction had stopped here, there could be no objection to the ruling in the Court below. But, unfortunately for Miss Nash, it did not stop here, for, as a part of the same transaction, she bought of the executor the "coal field land," at the price of $4,015. This purchase-money has not been paid. The record sets out, that for the purchase-money she executed her bonds to certain persons, who were creditors of the executor. (We will remark that the omission to set out the names of the persons to whom Miss Nash executed her bonds is a want of certainty inexcusable in judicial proceedings.) Had she paid the purchase-money all would have been well.

This Court has never adopted the doctrines of the Courts in England, by which "a purchaser from a trustee is bound to see to the application of the purchase-money." But here the purchase money has not been paid and the Court will arrest it and see to its application.

There is a fund in the hands of Miss Nash which in conscience ought to be applied to the payment of the debts of the

38

testator, and the Court will not permit it to be directed and paid to the creditors of the executor, which is the direction attempted to be given in the original transaction. True, the testator was indebted to the executor, but it was a simple contract debt, and he cannot pay himself and commit a *devastavit* to the prejudice of a specialty creditor who has priority.

It was suggested at the bar that a large part of the debt, for which Miss Nash substituted her notes, was in fact a specialty debt of the testator ; should this be so the doctrine of subrogation will apply, and in regard to that, the executor will not have been guilty of a *devastavit;* but as to the other part, the right of the plaintiff, who is a specialty creditor, to have the fund arrested before it is paid over, and have it applied to his debt, is clear.

This right the plaintiff cannot set up by the proceeding in its present shape : to say nothing else, the *"certain persons"* who hold the bonds of Miss Nash are necessary parties, and there can be no adjustment of the equities until they are before the Court, so as to be bound by the final decree. For this defect the judgment in the Court below, dismissing the action, will be affirmed, unless Miss Nash may consent to an order remanding the case, to the end that proper parties be made, and the complaint be amended so as to strike at the purchase money of the coal field land.

In this connection there is another view of the subject, which we feel at liberty to present. Miss Nash says she was induced to become the purchaser of the coal field land because of her solicitude to be the owner of her father's residence, her home. She entered the transaction believing from what Dr. Strudwick told her, that his debt and her debt, were all the debts of her father, remaining unpaid, and upon this representation she agreed to pay what turns out to be an exorbitant price for the coal field land, but now she finds another large debt which has to be paid, so that the cherished wish of her heart to pay all the debts of her father cannot be accomplish-

ed without assuming a greater burthen than she supposed she was undertaking at the time of the contract of the purchase.

We are inclined to the opinion that these facts create an equity for recission, of the whole contract, so as to remit the parties to their original rights; to the the end that she may, if so advised, consent to the order remanding the case, our judgment affirming the judgment below will not be entered, until she certifies her election, which must be before the end of the present term. Otherwise the complaint will be dismissed *without prejudice* to further proceeding as the plaintiff may be advised.

PER CURIAM.                                        Ordered accordingly.