CHARLOTTE GRIMES v. ELIZABETH TAFT and R. T. WILSON, Adm'r of H. A. BOYD.

*Estoppel—Purchaser—Judicial Sale—Administration—Lien.*

1. A creditor having a specific lien upon the real property of a deceased debtor, and who has been made a party to a proper proceeding by the personal representative to sell such lands to make assets, is estopped from enforcing his lien against a purchaser at a sale made under a decree in such proceedings.

2. A purchaser under a decree to sell land for assets is not required to see that the money arising therefrom is properly administered.

3. Purchasers at judicial sales are only required to see that the Court has jurisdiction and the judgment authorizes the sale; and they will be protected against the errors and irregularities of the Court, and laches of the parties which they cannot see.

(*England* v. *Garner*, 90 N. C., 199; *Fowler* v. *Poor*, 93 N. C., 466; *Edney* v. *Edney*, 80 N. C., 81; *Shields* v. *Allen*, 77 N. C., 375; *Hunt* v. *Bank*, 2 Dev. Eq., 60, and *Whitted* v. *Nash*, 66 N. C., 590, cited and approved).

CIVIL ACTION, to set aside an execution for owelty of partition, and restrain defendant perpetually from issuing an execution, tried at March Term, 1887, of PITT Superior Court, before *Merrimon, Judge,* upon the following facts agreed :

1. John Boyd, Sr., died intestate in the year 1854, seized and possessed of certain lands in Pitt county, which descended to his children, Mary, John F., Sarah E., Elizabeth, Henrietta, McDowell and Henry Alonzo Boyd, who are his heirs at law.

2. In the year 1859, Mary and John F., having become of age, by decree of the County Court of Pitt, had their respective parts of their father's land allotted to them in severalty.

3. On August 26th, 1865, Elizabeth married one John S. Taft, and had her share of her father's land allotted to her in severalty. The commissioners who set apart the share of Elizabeth, charged on the lands of Sarah E., Henrietta, Mc-

13

Dowell and Henry Alonzo Boyd, the sum of $1,237.00 to make her share equal. One-fourth of this sum was to be paid to said Elizabeth by each of said parties, and was to be charged on the land to be thereafter allotted to them in severalty. At Fall Term, 1865, of Pitt County Court, judgment was rendered on said report.

4. In 1868, the respective shares of Sarah E., Henrietta, McDowell and Henry Alonzo Boyd, in their father's land being still held by them in common, were, upon petition, duly divided, lot No. 4 being assigned to Henry Alonzo Boyd.

5. John S. Taft, duly qualified as guardian of Henry Alonzo Boyd in 1869, and the sum of $1,830.01, the property of his ward, went into his hands as guardian, which was accounted for to the said ward.

6. The said Henry Alonzo became of age in June, 1870, and on the _____ day of June, 1870, conveyed 100 acres of lot No. 4 to one R. T. Wilson, which land has since become the property of the defendant, Julia Wilson.

7. Henry Alonzo died without issue, and intestate, in June, 1878, and all of lot No. 4, except the part sold to R. T. Wilson, as aforesaid, descended to Mary, John F., Sarah E., Elizabeth, Henrietta and McDowell Boyd, who were his brothers and sisters, and his heirs at law.

8. On the 13th of November, 1879, Robert T. Wilson, as administrator of Henry Alonzo, filed his petition in the Superior Court against the defendant Elizabeth, and the others, as the heirs at law of his intestate, reciting that the personal estate of intestate was insufficient to pay the debts, and praying for a sale of the land to make assets.

9. All of lot No. 4, except the part sold to defendant Julia, was duly sold by R. T. Wilson as administrator, under a decree of Court, at which sale Charlotte Grimes, the plaintiff in this action, became the purchaser, and upon payment of the purchase money, said land was duly conveyed to her.

10. The value of the part of lot No. 4, sold by Henry Alonzo, and now owned by Julia Wilson, is $560; the part of lot No. 4, owned by Charlotte Grimes, is $2,700.

11. The defendant, Elizabeth Taft, on the 7th of July, 1885, for a mere nominal consideration, made and duly executed to her co-defendants, R. T. Wilson and Julia Wilson, a release from any and all claims that might arise against them by virtue of said judgment.

12. The defendant, Elizabeth Taft, in May, 1885, caused an execution to issue on said judgment, directing the sheriff to sell the lands allotted to Henrietta, Sarah E., McDowell and Henry Alonzo, to satisfy the said judgment of $1,237.

13. No execution had previously issued on the judgment, and no motion for leave to issue execution was made, and no notice of the issuing of the execution was served on plaintiff.

14. More than ten years elapsed from the time Henry Alonzo became of age until the issuing of the execution on the judgment, not counting the time when there was no administrator on his estate. John S. Taft, the husband of said Elizabeth, died more than three years before the execution issued on said judgment.

15. Plaintiff shows no other payment than that arising from presumption of time, or by statute of limitation, or by estoppel, or than otherwise arises from the facts stated.

16. R. T. Wilson, administrator, after paying the debts of his intestate, paid to Elizabeth Taft $615.27, as her portion of the estate of her brother Henry Alonzo—Elizabeth being one of the distributees and heirs at law of said Alonzo and one of the party defendants in the action to sell the land to make assets to pay the debts of said Alonzo.

17. John S. Taft died utterly insolvent April 27th, 1877.

18. The defendant, Elizabeth Taft, was born on March 1st, 1843, and was married to John S. Taft on December 3d, 1861.

19. Henry Alonzo Boyd was born some time in the year 1849, and died in November, 1877.

Upon this state of facts as agreed, the Court was of opinion that the plaintiff was entitled to the relief demanded in the complaint, and gave judgment in her favor, from which the defendant, Elizabeth Taft, appealed.

*Mr. W. B. Rodman, Jr.,* for the plaintiff.
*Mr. A. W. Haywood,* for the defendants.

DAVIS, J.   Whether the charge on the land allotted in the partition to Alonzo was a judgment or simply a statutory lien; whether the execution was irregular and void; whether it could be issued at all, and if so, without notice to the heirs; whether there was a presumption of payment and satisfaction; the effect of the release executed by Elizabeth Taft to R. T. Wilson and Julia Wilson; whether the plaintiff is entitled to a judgment against the defendant, R. T. Wilson, administrator of Alonzo Boyd; whether the funds belonging to the estate of Alonzo Boyd, a portion of which was paid to Elizabeth Taft can be followed, and other points presented and argued at length in this Court, are in the view which we take of this case, not material or necessary to its determination.

The partition was made in 1865, the execution was issued in 1885, and in the intermediate time Alonzo Body had died intestate and without issue, and the land allotted to him, except the portion previously sold to Wilson, descended to his heirs-at-law, one of whom was the defendant Elizabeth, subject however to the payment of his debts, if the personal property should not be sufficient for that purpose.

In 1879, the defendant, R. T. Wilson, administrator of Alonzo Boyd, under a judgment of the Superior Court of Pitt county, rendered in special proceedings instituted against the heirs-at-law of his intestate, to make real estate assets to pay debts, sold the said land, when the plantiff became the

purchaser, paid the purchase money, and the land was conveyed to her under the decree of the Court.

It it not denied that the sum charged upon the share allotted to Alonzo to make the division equal in the partition of the lands of John Boyd, was a specific lien upon the land so charged, and if not paid, the land descended to the heirs of the said Alonzo, subject to this specific lien.

The proceedings under which the land was sold are not set out in full, but it is to be assumed that they were regular, and the judgment and sale in accordance with the requirements of the statute. At all events, the defendant Elizabeth was a party thereto, and cannot be heard to say that they were not. It was necessary, among other things, that the petition should set forth the amount of the outstanding debts, and " a description of all the legal and equitable real estate of the defendant, with the estimated value of the respective portions or lots."

It is insisted by the defendant, that the plaintiff purchased with notice of the lien upon the land created by the report and judgment confirming the same, made in the proceeding for partition; that being of record she was conclusively fixed with notice, and purchased subject to the incumbrance, and must now discharge it, or else it may be discharged by a sale of the land, and for this latter purpose the execution was issued.

So far from this being the correct view, when the petition for a sale of the land to make assets to pay debts was filed by the administrator against herself and others, heirs-at-law, &c., the defendant was obliged to know what debt, if any, was due to her from the deceased; whether the "legal and equitable real estate" of the decedent was truly described; whether she had any claim or lien upon the land sought to be sold; and if so, she was further obliged to take notice of the law which prescribes the order in whith the administrator was required to pay debts, and which made it his duty first of all to pay "debts which by law" had a *specific* lien

upon the property of his intestate, and as against the plaintiff, she is concluded by the sale, she cannot be heard to say that the title of the purchaser was not good. Purchasers in good faith at judicial sales are protected, says MERRIMON, Judge, in *England* v. *Garner*, 90 N. C., 199, "against the errors and irregularities of the Court, and the laches of parties which they cannot see, and of which they have no opportunity to inform themselves," and for this he cites many authorities. Purchasers at judicial sales are not required to do more than to see that the Court has jurisdiction, and that the judgment authorizes the sale. *Fowler* v. *Poor*, 93 N. C., 466; *Edney* v. *Edney*, 80 N. C., 81; *Shields* v. *Allen*, 77 N. C., 375. As against the parties to the proceeding under which the plaintiff purchased, she acquired a perfect title to the whole of the land; there was nothing to indicate that less than the whole estate was sold, and they are estopped.

It was the duty of the administrator to pay the debts of his intestate in their respective order, and the purchaser was not required to see that the purchase money was properly applied by him, and if the defendant failed to get what was due to her, it was, as against the purchaser, her own fault. *Hunt* v. *Bank*, 2 Dev. Eq., 60; *Whitted* v. *Nash*, 66 N. C., 590.

By the purchase and deed made in pursuance of the judgment of the Court, the plaintiff acquired a title to the land discharged of the lien, and is entitled to the relief demanded. It appears that after paying the debts of his intestate, there remained a considerable surplus from the proceeds of the sale of the land, of which $615.27 were paid to the defendant as one of the distributees and heirs-at-law of Alonzo Boyd. It does not appear from the case agreed, what disposition was made of the remainder, and the judgment of the Court below is affirmed, saving and reserving to the defendant all rights, if she shall be advised that she has any, against R. T. Wilson, administrator of Alonzo Boyd, or against her co-heirs and distributees of the said Alonzo.

No error.                                             Affirmed.