RUFUS EDNEY, Adm'r., v. THOMAS A. EDNEY and others.

*Practice—Judicial Sale.*

One who, as commissioner of the court, sells the real estate of a dece-
dent for assets, is understood to offer an absolute and indefeasible title ;
and the purchaser will not be compelled to pay his money and take a
title substantially defective, unless the sale be made of an estate or
interest short of the entire title, and so mentioned in the decree, or
clearly implied from the nature of the sale.

(*Ex Parte Yates*, 6 Jones Eq., 306 ; *Shields* v. *Allen*, 77 N. C., 375, cited
and approved.)

PETITION filed before the clerk and tried, upon issues joined, at Fall Term, 1878, of HENDERSON Superior Court, before *Avery, J.*

This was a petition filed by Rufus Edney, administrator of B. M. Edney, for a license to sell the real estate of his intestate, including a tract called the "Myers farm," and was begun by summons returnable in the office of the clerk of the superior court of Henderson county, and after all the heirs at law of the intestate were regularly made parties

and issues of fact joined in the pleadings, the cause was transferred to the docket of the superior court for trial of the issues at term.

At fall term, 1871, of the superior court of Henderson, by consent of all parties, it was referred to R. B. Vance to state and report to court an account of the administration of the estate by the plaintiff, and the account was taken and reported to court as ordered. It appearing from the said account that there was a necessity to sell the real estate of the intestate, it was decreed at fall term, 1875, that the plaintiff have license to sell the same, and amongst the sales made he reported to the court a sale of the Myers farm in four parcels—two to W. G. Rice at $1,920, and two to O. H. Moss at $1,375, of which sums twenty per cent. was paid down in money on the day of sale, and the residue secured by the bonds of the purchasers respectively, with good surety, payable at twelve months, and on report of sales filed, an order of confirmation was regularly made by consent of all parties.

At the maturity of the bonds given by W. G. Rice and O. H. Moss, as above set forth, the plaintiff, as commissioner, put the same in a course of collection by instituting actions thereon, and after the pleadings were filed and issues joined by consent of parties the two actions were incorporated into the cause in which the license to sell was obtained, upon the agreement that they were to be taken and treated as motions in that cause, and the result of the motion in one to be accepted as the result in the other. On the hearing of the motion, the purchasers resisted judgment against them on the ground of a defect of title in the heirs of B. M. Edney, and on the further ground of false representations by the plaintiff as to the quantity of interest in the Myers farm owned by his intestate, made at the time of the sale, and inducing them to become bidders.

It was admitted at the hearing of the motion that B.

M. Edney, the intestate, owned at his death only one-fifteenth of the land in question, in fee, three out of five life estates therein, and there being a conflict of evidence touching the alleged false representations made by the plaintiff at the time of the sale, His Honor made and submitted certain issues to a jury as to that matter, who found that the plaintiff represented at the sale that his intestate owned, and he was then selling two undivided thirds of the Myers farm; and on this response of the jury His Honor adjudged that the order of confirmation theretofore made be vacated, and the sales to Rice and Moss be set aside and the bonds sued on be cancelled and returned to the purchasers. He further adjudged that plaintiff pay back to said Rice and Moss the amounts paid by them as a cash payment on the day of sale, with interest thereon, and from this judgment the appeal is taken.

*Mr. J. H. Merrimon,* for plaintiff.
*Mr. M. E. Carter,* for defendants.

DILLARD, J. (After stating the case.) We concur in the judgment of His Honor. In sales under a decree of the court, a sale made by a commissioner appointed for that purpose ascertains a proposer merely on the terms specified in the decree, and on compliance with the terms of sale he acquires the right to be reported to court on his proposal, and when the report is made and a confirmation is adjudged by the court the bargain is struck and each party then occupies the status, to be entitled to have a specific execution of the contract as against the other, that is to say, the vendors, or holders of the title, making the sale through the agency of the court, by the order of confirmation have the right to call on the purchasers to pay the money and take the title, and the purchaser has the reciprocal right to call on the vendors to accept the money and execute title to him. *Ex-*

*parte Yates*, 6 Jones Eq., 306; Rorer on Judicial Sales, 60, §§ 152, 1853.

On confirmation of the sale the orderly proceeding in equity was a rule on the purchaser to show cause against specific performance of the contract, and under our present system it is a motion in the cause for judgment on the bonds for the purchase money. Under either system the purchaser is thus brought in and connected with the cause and has an opportunity to show cause, if any he have, against an order for specific performance under the equity system, or against the rendition of judgment on his bond for the purchase money under our North Carolina system. In accordance with this practice, the two suits irregularly brought against W. G. Rice and O. H. Moss, after being put at issue, were by consent to be treated as motions in the cause still pending, in which the decree for the sale of the lands had been made. The purchasers being thus for the first time brought into court, and having opportunity to show cause against the confirmation of the sale and its specific enforcement, had the liberty to defeat the motions for judgment by any matter or facts which on a regular bill in equity would induce a chancellor, in the exercise of a legal discretion, to decline to decree specific performance against a vendee. Being brought into court in defence of the motion for judgment, the purchasers were found by the jury, on an issue submitted to them, to have purchased the Myers farm upon the representation by the plaintiff, the administrator of B. M. Edney, and the instrument of the court, that his intestate was the owner of two undivided thirds of that farm. This fact, with the admission before the judge that the intestate in truth and reality owned but one-fifteenth in fee, and three shares out of five for life in the land, constituted the cause shown against the rendition of judgment. And the question is, how ought His Honor to have held on these facts?

A court of equity will not enforce specific performance of a contract where mutuality of performance can not be had. Adams' Eq., 80. And here, whilst the purchasers are proceeded against as able to pay for two-thirds of the Myers farm, it is admitted that the heirs of B. M. Edney own only one-fifteenth, in fee, and three shares out of five for life, and therefore they cannot be compelled to perform on their part. Again, specific performance will not be decreed if there has been wilful misrepresentations by a party interested and conducting the sale, reasonably relied on by the purchaser and constituting a material inducement to the contract. Adams' Eq., 117; Rorer on Jud'l Sales, § 421. And here we have a false representation made by the plaintiff who, from his access to the papers of his intestate, may be taken to know the extent of his title, and who, therefore, may be reasonably relied on by the purchaser when he represents the quantity of interest to be two-thirds, and, under this state of things, it would be against good conscience to hold the purchaser to pay for the land.

Besides these grounds influencing the discretion of a chancellor against a decree for the specific performance of the contract, it is settled in this state, that in judicial sales, a good title is to be deemed as offered, and the purchaser will not be compelled to pay his money and take a title substantially defective, unless the sale be made of an estate or interest short of the entire title, and so expressly mentioned on the face of a decree, or clearly implied from the nature of the sale. *Shields* v. *Allen*, 77 N. C., 375. To this rule we fully assent as material to establish a confidence in sales made by authority of the court, and as conducing to beget fair competition of bidders. And we agree that the doctrine of *caveat emptor* should not apply to such sales, unless there be something on the face of the decree indicating a sale of some estate or interest defective, or less than a whole title, and thereby putting the purchaser on his guard and at his

own risk. Tested by these principles. in this case it will appear that in the petition and decree a description is given of the land to be sold in language broad enough to impress the purchasers if they were notified thereof, that the sale was of the. whole title and not a fragment, and thereby they would be drawn in to bid upon the confidence that a court of equity would not take their money unless the thing bought could be effectually conveyed.

W,e conclude therefore that upon the general doctrines of a court of equity above enunciated and upon the authority of the case of *Shields* v. *Allen,* the purchasers should have been released from their contract and put *in statu quo* as was decreed by His Honor, and that the lands should be sold again on terms indicating the situation and extent of the title proposed to be sold.

There is no error. Judgment of the court below affirmed. Let this opinion be certified that such further proceedings may be had in this case as the parties may be advised.

No error.                                          Affirmed.