## C. M. WHITLOCK v. AUBURN LUMBER COMPANY.

(Filed 23 March, 1910.)

1. Courts—Reference to Inform Court—Equity—Chancellor—Procedure.

A referee appointed by the court to ascertain and report upon matters arising for the court's determination, is not a reference under the Code of Civil Procedure, and the judge, sitting as a chancellor, may adopt the findings of the referee, hear additional evidence, reject such as he may disapprove, determine the matter upon the facts found by himself and adjudge the result thereupon.

2. Corporations Insolvent—Receiver's Sale—Purchaser's Defective Title—Cost to Perfect—Purchase Money—Interest.

Upon petition of a purchaser at a receiver's sale of an insolvent corporation, setting forth that the title to a certain tramroad, necessary for the hauling of lumber from the lands purchased, and sold with the land, was, as to certain parts, defective, and that the receiver announced at the sale that he would sell the property, including the tramroad, free from liens or encumbrances, the court referred the matter for a report of the facts, and found and adjudicated from the facts appearing that the receiver made no misrepresentations, that there was no element of fraud, and that the purchaser had not tendered a certain balance of the purchase price, but it. had cost him the sum of $20 to perfect his title to the tramway: *Held*, that it was not error to enter judgment that the purchaser pay the balance of the purchase price, less the $20 so paid by him, with interest; and the question as to whether the sale of .the property of an insolvent corporation is a judicial sale is not presented.

APPEAL by Thomas B. Pierce from *Guion, J.*, at January Term, 1910, of NEW HANOVER.

This appeal presents the following facts for consideration: The defendant, an insolvent corporation, was placed in the hands of Cameron F. McRae, receiver. Its property. consisted of a sawmill plant, timber rights, tramroad, rights of way, etc. During the progress of the litigation an order was made transferring the rights of certain creditors asserting liens upon certain of the company's property to the fund to be derived from the sale by the receiver, and an order of sale was made. Pursuant to said order, the receiver executed the order of sale on 3 October, 1903, when T. B. Pierce became the last and highest bidder for $3,141. The sale was duly reported and confirmed, and the purchaser has paid $2,275.32 of the purchase price, leaving unpaid $865.68. At the sale the receiver announced that, by an order of court, all liens held by creditors against the property had been transferred from the property to the funds to be derived from sale, and that he would sell the property of

the lumber company, including timber, mill plant, buildings, tramroad, etc., free from liens or encumbrances. It is also found as a fact by the referee to whom the matter was referred by the judge, that both the receiver and the purchaser understood and believed that the company owned rights of way over all the lands on which the tramway was located. This tramroad was about six miles in length, running from the mill to the A. C. L. Railroad, and was valuable in getting the lumber from the mill to the railroad. It developed after the sale that the company did not own the right of way across all the lands between its mill and the railroad, and the purchaser, Pierce, was forbidden, two years after his purchase and possession thereunder, to longer use the tramroad on certain lands over which it passed; thereby the tramroad was rendered ineffective for its purpose, and the purchaser hauled a large quantity of lumber to another station, at an increased cost to him. It, however, developed, and this fact is so found by the referee and adopted by the court, that the purchaser acquired the use of the right of way over the land of one of the contrariant owners for $20, and this sum was allowed the purchaser, Pierce, as a credit on the balance due, and that he acquired the right of way over the land of the only other objecting landowner without the payment of any money or other thing of value. His Honor disallowed the exceptions filed by the purchaser to the findings of the referee, among them a claim for damages for the difference in the cost of hauling the lumber, adopted his findings and gave judgment against the purchaser for the balance, $865.68, less $20 paid as aforesaid, and interest from 10 October, 1903, the day of sale. The purchaser excepted and appealed to this Court.

*Meares & Ruark* for receiver.
*Stevens, Beasley & Weeks* for appellant.

MANNING, J., after stating the case: In speaking of the character of the reference in such cases as this, and of the power of the courts over the findings of the referee, this Court said, in *Tate v. Davis, ante,* 177, a case similar to this: "The reference was not one made under the provisions of the Code of Civil Procedure, where a referee is appointed to hear and determine issues raised by the pleadings in a civil action. It is mere inquiry made at the direction of a chancellor who wishes to inform his conscience as to the justice of a demand made on a fund in his control. He may set aside *ex mero motu* the recommendations of the referee or master, and examine into the facts himself." The judge, sitting as a chancellor in such matters, may adopt the findings of the person appointed by him to hear the

evidence and report his findings of fact, using the same evidence taken in such hearing, or hearing additional evidence, or the judge may reject such findings as he may disapprove, and determine the matter upon the facts so found by him, and adjudge the result thereupon.

The contention of the appellant is that the sale by the receiver was a judicial sale, and he had the right to assume that he offered a good title—the entire title—as the sale of a less estate or interest was not expressly mentioned in the face of the decree, or clearly implied from the nature of the sale. *Shields v. Allen,* 77 N. C., 375; *Edney v. Edney,* 80 N. C., 81; *Carraway v. Stancill,* 137 N. C., 472. The question whether the sale of the property of an insolvent corporation is a judicial sale, within the comprehension of the principle stated in the three cases above cited, is an interesting question, but we do not think it is presented by this appeal, for, conceding that it is a judicial sale and embraced within the rule stated, it is found by the referee and his findings adopted by the judge, that in the two particulars wherein the purchaser claims he has suffered any loss or inconvenience, to wit, in securing the right of way over the land of Frederick and over the land of the Carlton heirs, he paid $20 for the former, which was allowed as a credit, and that to acquire the latter cost him nothing. Upon the general question as to the application of the principle stated in the cases cited above, in Smith on Receivership, sec. 34, p. 100, it is said: "As to the title and condition of the property, the rule of *caveat emptor* applies, and the purchaser takes the property subject to all liens or outstanding interests therein." Gluck and Becker's Receiver of Corporations, sec. 39, p. 100, sec. 40, p. 117; Alderson on Receivers, p. 817; Beach on Receivers, sec. 73, p. 785; *Larch v. Aultman,* 75 Ind., 162; *Hackensack Water Co. v. DeKay,* 36 N. J. Eq., 548. We will not, however, determine this question.

While the purchaser charges in his petition filed, that he relied upon certain statements made him by the receiver in a conversation about the sale, it is found as a fact that no misrepresentation was made by the receiver, and the findings expressly negative every suggestion of fraud. There is no evidence that the purchaser ever tendered the sum adjudged to be due by him, and he is obliged, therefore, to pay interest. Our conclusion, therefore, is that there is no error in the judgment appealed from, and it is

Affirmed.