26 P.(2d) 1077

**EMERICK et al. v. JACKSON CONSOL.
CO. et al.**

No. 3872.

Supreme Court of New Mexico.

Nov. 6, 1933.

Edward C. Wade, Jr., of El Paso, Tex., for appellants.

R. M. Wiley, of Silver City, for appellees.

HUDSPETH, Justice.

The chief question in this case is the jurisdiction of the court to sell through its receiver the encumbered assets of an insolvent corporation, where the secured creditors object and there is no equity for the general creditors or stockholders.

The appellees, stockholders and general unsecured creditors of Jackson Consolidated Company, a domestic corporation (no stockholders' liability), commenced this, a statutory proceeding for an injunction and receiver to wind up said corporation under 1929 Comp., § 32-174 et seq. Sections 3 and 4 of the complaint, filed on June 8, 1932, are as follows:

"3. That the said corporation is now and has been for a long time last past insolvent; that its indebtedness far exceeds its assets; that the said corporation issued its bonds in the principal sum of Forty Thousand Dollars ($40,000.00), and secured the same by a trust deed upon its property and assets; that all of the said bonds are now due and payable with interest in the aggregate sum of more than Fifty Thousand Dollars ($50,-000.00); that the total amount of indebtedness of the said corporation, as plaintiffs are informed and believe, approximates the sum and amount of Sixty Thousand Dollars ($60,-000.00); that the said corporation has no money with which to pay the same or any

part thereof; that the assets of the said corporation consist of two fractional patented mining claims in the Pinos Altos Mining District, Grant County, New Mexico, known as the Langston and Pinos Altos Mines, together with a small amount of equipment; that so far as plaintiffs are informed and believe, the said corporation has no other assets; that all of said assets are of a value of not to exceed Twenty-five Thousand Dollars ($25,000.00); that the indebtedness of the said corporation far exceeds its assets.

"4. That the defendant corporation has suspended its ordinary business for want of funds to carry on the same; that the ordinary business of the said corporation and the business for which it was incorporated and which it heretofore attempted to carry on has been suspended for a long time by reason of lack of funds to carry on the same; that the said corporation is not now able to and cannot resume its said business in a short time, or at all, with safety to the public or advantage to its stockholders."

On the 24th day of June, 1932, Charles C. Royall was appointed receiver and injunction issued against the corporation, its officers, etc., in the usual form. On the 30th day of June, 1932, six days later, the receiver filed a petition asking for authority to accept an offer made by a promoter for an option and lease on all the property of the receivership estate to run some four years (the first proposed payment on the purchase price, other than royalty on ore mined, falling due October 1, 1933, and the last proposed pay-

ment falling due October 1, 1936). The petition was granted and the lease and option agreement, with deed in escrow conveying the property free of liens, were entered into with the approval of the court. Objections on the ground, among others, that this was a "dry" receivership, and appeared to be such from the complaint of appellees, were seasonably made, and, on motion of appellants, appeals were granted from the order filed June 24, 1932, appointing the receiver and granting the injunction, and the order authorizing and approving the option and lease on the receivership property.

It appeared that the promoter had obtained options and leases upon a large group of mining claims in the Pinos Altos mining district and "practically all the mining claims adjoining and in the vicinity of the Langston and Pinos Altos Mines owned by said receiver." It further appeared that there was a deep shaft on the property of the receivership. Counsel for appellees denied that the lessee had removed considerable quantities of ore from the receivership property, and maintained that the main purpose of the promoter in obtaining the lease and option was to secure the right to the use of the deep shaft on the receivership property for the exploration, development, and in the mining of ore in adjoining properties. It was represented to the trial court that the use of this shaft, which had long been idle, would do the property no harm, that possession of it was essential to the carrying out of the plans of the promoter in developing and mining ores in adjoining properties, for the treat-

ment of which the promoter promised to build a mill—and, in brief, to convert a "ghost town" into a thriving mining camp. These rosy promises of employment for idle men and prosperity for the community may have obscured the facts that the appellees showed no interest in the property and that their complaint did not state a case for the drastic remedy of receivership.

It is admitted that the assets are insufficient to satisfy the undisputed secured claims. There is no allegation that the property would deteriorate during the litigation. On the other hand, it is a generally recognized fact that the extraction of ore from a gold mine is more than the ordinary use of real estate and sometimes amounts to waste or the consumption of the res. Hill v. Taylor, 22 Cal. 191; High on Receivership (4th Ed.) § 614. Counsel for appellees states that the lease and option to the promoter has been canceled by reason of his failure to make the payment on the purchase price, due October 1, 1933.

The law of this case was recently very clearly stated by Mr. Justice Simms, speaking for the court, in Maxwell Lumber Co. et al. v. Connelly et al., 34 N. M. 562, 287 P. 64, 66:

"Coming now to a construction of section 971, we find therein the only power which the trial court had to order a sale of assets free of liens. It must appear that the legality of the liens claimed are in dispute and that the property is of such a nature that it will deteriorate pending the litigation. Both of

these elements must concur; one of them alone does not authorize a sale free of liens. Reilly v. Penn Cordage Co., 58 N. J. Eq. 459, 44 A. 161. Where the statute does not authorize a sale free of liens, the receiver has no other course left but to sell subject to the liens, or, if there is no hope of realizing anything for the estate's equity, he should demand that the lien claimants take the property over under permission from the court, and proceed in their own way to satisfy their liens. A long and expensive administration of property in which there is no equity is not intended by the statute and, where permitted, should not be at the expense of the secured creditors unless they consent thereto. * * * And where there is no equity to be administered for general creditors and such fact is apparent from the start, even if the action is in statutory form and commenced by stockholders or creditors, it is a 'dry receivership,' and those who commence it may properly be required to give security for the costs and expenses, rather than attempt to charge them against the lienholders. Lembeck v. Jarvis Terminal Cold Storage Co., 68 N. J. Eq. 352, 59 A. 565."

Question is raised by the appellees, who gave no security, as to the right of V. H. Anderson, trustee for bondholders, to sue for foreclosure of the trust deed, the trustee named in the trust deed being a bank, now defunct, of a neighboring state. The court refused Anderson permission to sue the receiver, and this is assigned as error.

It is unnecessary to determine the right of bondholders, or their trustee, to sue without first requesting the trustee named in the trust deed, or its successor in office, to bring this suit. The only parties beneficially interested in the property are the bondholders here objecting to its sale by the receiver, free of liens. Since appellees have shown no interest in the property sufficient to justify the appointment of a receiver, the court should divest the receiver of jurisdiction over the property. The bondholders are entitled to these assets without diminution by receiver's costs or expenses. The receiver should not be permitted to reimburse himself or pay his counsel from funds in his hands, and should, upon hearing and notice to bondholders, be required to account for all money and properties, which have come into his hands, before his bondsmen are discharged.

A receiver is not necessary for the winding up of the corporation where there is no unencumbered property and no equity in the encumbered property for general creditors or stockholders. The orders appointing the receiver and authorizing the sale of the encumbered property, free of liens, will be reversed, and the cause remanded for further proceedings not inconsistent herewith. The costs, including the costs and expenses of the receivership, will be taxed against the appellees. It is so ordered.

WATSON, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.