CHAPMAN v. SCHILLER, Judge, et al.

No. 6013. Decided September 27, 1938. (83 P. 2d 249.)

516

*Critchlow & Critchlow,* of Salt Lake City, for plaintiff.

*Irvine, Skeen & Thurman,* of Salt Lake City, for defendants.

WOLFE, Justice.

This case is heard on an original application for a writ of prohibition to prevent a judge of the Third District Court from holding a receiver's sale according to notice given, at which sale the property of the Bamberger Electric Railroad Company, now in the hands of receivers, will be sold free of all liens and without right of redemption. The railroad

has been in receivership since about February 1, 1933, and on February 5, 1938, the receivers filed their report and petitioned the district court to sell the property as a unit, free of liens and without right of redemption. The principal liens are two deeds of trust issued in 1909 and 1927 to secure the payment of bonds. The first deed of trust ran to Harris Trust & Savings Bank of Chicago, Illinois, as trustee, and secured an authorized bond issue of $2,000,000 of 25 year 5% first mortgage bonds, due February 1, 1934. Of these bonds $1,500,000 were sold and are now outstanding, in default as to principal and interest. The second deed of trust, to Tracy Loan & Trust Company of Salt Lake City, Utah, covered all property of the railroad and secured $150,000 of second mortgage 6% bonds, which are in default as to interest only. Plaintiff is the owner of $3,000 of the first mortgage bonds and $2,000 of the 1927 issue.

Upon the filing of the receiver's petition, Judge Schiller entered an order directing that notice of the filing of the petition be served upon parties to the proceeding, that notice be mailed to those creditors whose claims were listed and by publishing notice once a week for six consecutive weeks in the Salt Lake Tribune. Before hearing on the petition the trustees under the deeds of trust securing bonds filed petitions joining in the request that the property be sold as prayed for by the receivers, and that the liens of the bonds be transferred to the proceeds of sale. The plaintiff and other bondholders received no personal notice of the filing of the petition.

On March 23, 1938, the day set for the hearing, Judge Schiller heard testimony in behalf of the petitioners and made findings of fact in which he found, inter alia, that an existing emergency required a speedy sale of the property and assets of the railroad company, under the equity powers of the court, and decreed a sale of all the real and personal property "as a single unit free and clear from all liens and encumbrances of every kind whatsoever" and transferring the

existing liens on the property to the proceeds of the sale in their same order of priority.

To prevent the district court from carrying out this sale, the plaintiff obtained from this court an alternative writ of prohibition, alleging that the district court was without jurisdiction to order a sale free of liens and encumbrances without right of redemption, and to deny plaintiff and other bondholders their right to foreclose. Matters within the discretion of the district court are not here reviewable.

Undoubtedly there have been numerous instances where receiverships have been appointed, not for the real purpose designed by the statute, i. e., to preserve and operate or liquidate the property for the benefit of the creditors, but to protect the debtor from the creditor. Courts have unwittingly and at times, it appears, almost wittingly been a party to such purpose. Also after a period of operating receiverships, receivers' sales have been ordered which have resulted in the denial of rights to mortgagees or lien bondholders. But a rule which would prevent the courts in receivership proceedings from making any order depriving bondholders of their right of redemption is too inflexible. It is too much like burning down the house to rid it of rats. In many cases it is to the advantage of the boldholders that the sale be ordered without right of redemption. This may or may not be true in this case. But we are not here testing out the question of whether the court abused its discretion in ordering the sale as it did, but only the question of whether it exceeded its power.

I. The main question is, does the court, in receivership cases of public utility properties, have the power to order a receivership sale of those properties free and clear of all right of redemption without the consent of all bondholders? This presents squarely the question of whether the court's power in reference to receiverships contains the power to sell on terms fixed by the court, independently of the foreclosure statutes. We think the court

has such power.  The reason is quite fundamental and lies in the nature of receivership proceedings as distinguished from the statutory foreclosure proceedings.  The latter provides a method for the lien holder to satisfy his debt from the pledge.  It does not supersede the power of the court to deal with property properly in its custody for operation or liquidation through its own instrumentality, a receiver.  This power is a judicial power.  It arises as a fit mode of exercising its more ultimate power of preserving and administering a debtor's property for the benefit of all parties concerned, but primarily for the creditors.  It is therefore spoken of as judicial rather than statutory.  Although statutes do prescribe the conditions and limits of its exercise, we are not here concerned with the power of the legislature to prescribe conditions or limitations on the power by statute.

A receiver's sale is said to be a judicial sale as contradistinguished from a sheriff's sale on execution or foreclosure. *Cressler* v. *Tri-State Loan & Trust Co.*, 182 Ind. 572, 107 N. E. 68; 35 C. J. 810.  And such judicial sales, unless defined or regulated by statute, rest upon and are governed by the order of the court decreeing the sale. In a judicial sale the court makes its own law of the sale, subject only to the use of sound discretion in the exercise of the power.  High on Receivers, 4th Ed., Sec. 191; Clark on Receivers, Sec. 591.  The statutory provisions governing mortgage foreclosures or sales on execution do not apply to a sale by a receiver. *American Mine Equipment Co.* v. *Ill. Coal Corporation*, 7 Cir., 31 F. 2d 507; *Yakima Finance Corp.* v. *Thompson,* 171 Wash. 309, 17 P. 2d 908; *Bailey & Collins* v. *Ryan Cotton Oil Mill Co.*, 119 Okl. 57, 248 P. 321; *Home Mortgage Co.* v. *Sitka Co.*, 148 Or. 502, 36 P. 2d 1038; Clark on Receivers, Sec. 592; High on Receivers, Sec. 199c; 53 C. J. 210, Sec. 330.

We conclude, therefore, that receivers' sales made under proper order of court with jurisdiction of the interested parties (to be later considered) is valid by virtue of a power outside and independent of the

power which is in the courts by reason of the foreclosure statutes.

II. Can the property be sold at a receiver's sale by order of the court, free from right of redemption? It follows as a corollary from what has been said that the court in its sound discretion may do so. Right of redemption is a privilege conferred by statute. It does not exist independently of statute. 16 R.C.L. 141. The statutory right of redemption is conferred in case of execution sales. It does not exist by statute in the case of receivers' sales. Consequently, the right of redemption, together with a named period for redemption, may be given or withheld by the decree of the court ordering a receiver's sale. *Home Mortgage Co.* v. *Sitka Co.*, supra. Generally in selling a railroad we would expect the right to be withheld because the sale with the privilege of redemption would keep a purchaser in such uncertain status during the period that the property might not bring as much as it would if the privilege were contained in the decree of sale. The court's discretion in conferring or withholding the privilege might, in a proper action, be attacked but not in an action such as this which is to test only its power.

III. Can the property be sold at receiver's sale free of liens? Ordinarily only the debtor's equity is sold at receiver's sale. The property is sold subject to liens. *J. W. Dann Mfg. Co.* v. *Parkhurst*, 125 Ind. 317, 25 N. E. 347; *Whitlock* v. *Auburn Lumber Co.*, 152 N. C. 192, 67 S. E. 504; *Cashin* v. *Murphy*, 132 Miss. 834, 96 So. 747; High on Receivers, Sec. 191; Clark on Receivers, Sec. 639; 16 R. C. L. 138; 53 C. J. 209, Sec. 328. By weight of authority the property may be sold free of liens where the lien holders are parties to the proceedings. See *State ex rel. Dooley & Co.* v. *Superior Ct.*, 128 Wash. 253, 222 P. 492, 35 A. L. R. 255, *Van Huffel* v. *Harkelrode*, 284 U. S. 225, 52 S. Ct. 115, 76 L. Ed. 256, 78 A. L. R. 458, where cases pro and con are cited. The following authorities uphold the right of the court to sell free of liens of parties to the proceedings. *Black* v.

*Manhattan Trust Co.*, D. C. Or., 213 F. 692; *Spreckels* v. *Spreckels Sugar Corp.*, 2 Cir., 79 F. 2d. 332; *People's Pittsburgh Trust Co.* v. *Hirsch*, 3 Cir., 65 F. 2d 972; *Baird* v. *Moshannon Coal Min. Co.*, 318 Pa. 63, 178 A. 19; *Home Mortgage Co.* v. *Sitka Co.*, supra; *Buss Machine Works* v. *Watsontown Door & Sash Co.*, D. C. Pa., 2 F. Supp. 757; 34 Cyc. 332; 53 C. J. 209.

Some courts have been guided by a rule which, on its face, has much to recommend it and which would indicate that the court here might have acted improvidently. That is, where there is no equity in the person in receivership, such that on a sale nothing would be obtained for the general creditors, a sale free of liens will not ordinarily be ordered. This is based on the now established rule in bankruptcy cases as expressed in *Louisville Joint Stock Land Bank* v. *Radford*, 295 U. S. 555, 584, 55 S. Ct. 854, 860, 79 L. Ed. 1593, 97 A. L. R. 1106:

"By the settled practice, a sale free of liens will not be ordered by the bankruptcy court if it appears that the amount of the encumbrance exceeds the value of the property." (With numerous authorities.)

This rule has been applied to sales by receivers in the following well considered cases: *Spreckels* v. *Spreckels Sugar Corp.*, supra; *Home Mortgage Co.* v. *Sitka Co.*, supra, at page 539, 36 P. 2d 1038; *Emerick* v. *Jackson Consolidated Co.*, 37 N. M. 600, 26 P. 2d 1077 (governed by statute); *Buss Machine Works* v. *Watsontown Door & Sash Co.*, supra. But we have no occasion in this case to determine whether such rule should be adopted in this jurisdiction. The rule wherever adopted has been held to be discretionary. Consequently, if we held it to exist in this state, the ruling of the court contrary thereto would be at most error and subject to review by appeal from the appointment of the receiver or from the sale but would not be in excess of the court's jurisdiction and correctable by prohibition unless it came under the exceptions of *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377. There it was said that in

certain cases, in order to arrest a court from committing gross error, the consequence of which might be irremediable by appeal, we might, where those consequences would be very damaging, issue a writ arresting action until we had opportunity to review the court's order or impending order. Under the case of *Attorney General* v. *Pomeroy,* 93 Utah 426, 73 P. 2d 1277, 114 A. L. R. 726, there is nothing which would prevent us from doing this. This might be such a case because if sold free from liens an appeal would do the bondholders no good unless the sale were halted pending the appeal, which might itself be harmful. But we are relieved of deciding whether the court acted with sound discretion in this case because prohibition was requested, not on the ground that a case was presented within the exception named in *Atwood* v. *Cox,* supra, but on the ground that the court acted in excess of jurisdiction.

Considering the instant case as an ordinary receivership the power of the court to order such a sale as that herein is amply supported by the authority of well-reasoned cases from many jurisdictions. With greater force it applies in case of a public utility—in this case a railroad—over which there is wider control than over strictly private corporations. In the case of *Oldroyd* v. *McCrea,* 65 Utah 142, 235 P. 580, 40 A. L. R. 230, it was said [page 584] :

> "The rule is well settled that a court of equity in cases of receivers of railroads, upon a proper showing of necessity and upon notice and hearing, may authorize a receiver to issue and sell certificates and make them first liens and displace prior existing liens, with or without the consent of prior lienholders; but it is not often where such power is exercised in other cases of quasi public corporations, and rare where it is exercised in case of a mere private corporation."

See, also, Rose's Notes on the United States Reports on *Hammock* v. *Loan & Trust Co.,* 105 U. S. 77, 26 L. Ed. 1111, and the note to *Clearwater County State Bank* v. *Bagley-Ogema Telephone Co.,* 116 Minn. 4, 133 N. W. 91, 36 L. R. A., N. S., 1132 Ann. Cas. 1913 A, 624-627. We conclude, therefore, that a court has power to sell at receiver's sale free

from liens. But as has been said above, it is an imperative prerequisite to a sale free of liens that the parties having such rights be parties to the proceedings.

IV. Were the party lien holders in this case parties to the proceedings? That depends on whether proper notice was given therein. In the absence of statutory requirements in cases where a court in administering property as in probate or receivership for the purpose of distribution of the same or for the purpose of liquidation for creditors and not as in foreclosure proceedings (where jurisdiction is assumed for the purpose of effecting a particular creditor's resource from particular property) the court may prescribe such notice as under the circumstances seems most likely to give notice to all parties interested. This arises again from the necessities of the administration procedure. If the property is to be sold, and a fund created in its place, there can be effective action in regard to the property and the creditors be taken care of from the fund. It is, unlike a foreclosure proceeding, not necessary to have a judgment before sale can be decreed.

In this case the court required that service be made by serving notice upon the parties, mailing notice to non-resident creditors who had listed their claims and by publishing notice in the Salt Lake Tribune once a week for six consecutive weeks prior to the sale. This is reasonable notice for service by publication as provided in Secs. 13-0-7 to 13-0-10, 52-2-4, 102-9-1, and 102-14-1 and 2, R. S. U. 1933. In the following cases notice of sale by advertisement and publication was held adequate. *Walter M. Ballard Co.* v. *Peyser,* 67 App. D. C. 169, 90 F. 2d 414, 417, 418; *Nisbet* v. *Great Northern Clay Co.,* 41 Wash. 107, 83 P. 15; *Farmers' Hardware & Implement Co.* v. *Thacker,* 54 Okl. 425, 153 P. 1144; *Bailey & Collins* v. *Ryan Cotton Oil Mill Co.,* supra; High on Receivers, Sec. 191; 53 C. J. 207, Sec. 322. Thus in this case all the bondholders were properly served with notice and made parties to the proceedings. The trustee was in court and joined in the request

for a sale without right of redemption and free from liens. Because we think the bondholders themselves received proper and adequate notice, we deem it unnecessary to decide whether the trustee represented the bondholders in the action.

V. Did the court proceed without jurisdiction as to the bondholders? We have under IV considered what it required to make the bondholders parties to the proceedings for the purpose of selling the property free from liens. The same notice that makes them parties to the proceeding for the purpose of ordering a sale free from their liens also suffices for making them parties to the proceeding for all purposes of administration of the property, and especially for the purpose of ordering the sale.

It results from what has been said above that the court did not proceed without, or in excess of, its authority. Permanent writ of prohibition is denied. Temporary writ withdrawn. Costs awarded to respondents.

FOLLAND, C. J., and HANSON, J., concur.

LARSON, Justice (concurring).

I concur, but I think the majority opinion does not adequately answer the principal arguments raised by plaintiff in support of the petition for the writ.

The real crux of the case is that the order of the defendant court is in excess of its jurisdiction and void because it deprives the mortgagee bondholder of substantial and presumably valuable rights with respect to her contract in that (a) It deprives her of the presumably valuable benefits to be derived from possible redemption from the foreclosure sale; (b) It deprives her and them of the right to apply the indebtedness (the bonds) to the purchase of the property. In short, plaintiff contends that as a bondholder she is a mortgagee and therefore by virtue of her mortgage has a contractual property right in the equity of redemption, which is a valuable or property right, of which she is de-

prived by the sale without redemption and free of encumbrances. This it seems to me is founded upon a misapplication of the statute. The right of redemption did not exist at common law. It is a creation of the statute, exists only by virtue of the statute and confers rights only on those designated by statute and in the cases therein specified. It was created for the benefit and protection of the owner or mortgagor. It is a limitation upon the rights and privileges of the mortgagee or creditor; from him that taketh, it takes; and to him that loseth, it giveth. It seeks to prevent the creditor or the foreclosing mortgagee from obtaining, due to his position, a drop of blood and confines him as far as practicable to his pound of flesh, that which the bond giveth. The right of redemption does not exist in the foreclosing mortgagee; he is given no such right; he cannot redeem from the sale made at his instance. Nor can the judgment creditor who sells on execution do so. He has the right to ask a sale of the property and have the proceeds applied in satisfaction of his claim, and when that is done his interest in the property ceases. Redemption is a right granted only to those whose rights are adversely affected by the sale, those who stand to lose and not to those who stand to receive or gain from the sale. The statute, Sec. 104-37-30, R. S. U. 1933, reads:

"104-37-30. Who May Redeem.

"Property sold subject to redemption as provided in the next preceding section, or any part sold separately, may be redeemed, in the manner hereinafter provided, by the following persons or their successors in interest:

"(1) The judgment debtor, or his successor in interest in the whole or any part of the property.

"(2) A creditor having a lien by judgment or mortgage on the property sold, or on some share or part thereof, subsequent to that on which the property was sold.

"The persons mentioned in subdivision (2) of this section are in this chapter termed redemptioners."

It is plain that redemption is only in the owner, in judgment creditors, or in the holder of a mortgage subsequent

in date to the judgment or the mortgage under which a sale is had. It exists only in favor of the owner or a junior lienor from a sale brought about by his senior lienor. It does not lie from voluntary sales by the owner nor from forced sales by the holders of junior or inferior liens. It exists to protect the owner or junior lienor from the advantage of position held by the superior or senior lienor. The superior lienor, that is, the one causing the sale, may bid on the property and pay his bid by credit on the judgment under which sale is made. Such right does not exist in a junior lienor. To protect his lien he may therefore redeem, that is, pay off the interest of the superior lienor in the property and thus render his lien the paramount one. The right of redemption is one given by the law and not by contract of the parties. Courts generally hold that a waiver of the right of redemption, inserted in a mortgage, is void and unenforceable. *Brine* v. *Hartford Fire Ins. Co.,* 96 U. S. 627, 24 L. Ed. 858; *Peugh* v. *Davis,* 96 U. S. 332, 24 L. Ed. 775; *Dennis* v. *Kelley,* 81 Okl. 155, 197 P. 442; Tracy on Corporate Foreclosures, Sec. 217.

Neither can an owner by his voluntary act create a right of redemption in another. The owner or lienor having such right may sell or assign the same to another but he cannot create such right by any act of his own. And unless he is one in whom the law has created such right he cannot sell or create it. It is a right which the statute gives to the limited class it seeks to favor and protect and which it withholds from all others. It does not, it cannot, exist by virtue of contract; it is not founded on contract, and interference with it or its denial or abrogation is not impairing any contractual rights or privileges. The lawmakers may at any time change, enlarge, diminish, or deny it altogether and no one cay say them "Nay" or be heard to complain.

How then can the receiver's sale deprive plaintiff of a right of redemption from foreclosure sale? If there is no foreclosure sale there can be no right of redemption therefrom. If plaintiff's mortgage, the trust deed, was foreclosed,

she being the mortgagee whose mortgage foreclosure brought on the sale would have no redemption right thereunder. If the second trust deed or mortgage was foreclosed the beneficiaries under the first mortgage, not being affected by the sale, have no redemption rights. Only in the event that the first mortgage was foreclosed and plaintiff stood upon her rights under the second mortgage could she claim any redemption status at all. It may well be doubted that the holder of a first and also a second mortgage by foreclosure of the first mortgage can under his second mortgage still stand as a lienor entitled to redeem from his own sale. But that we need not decide. Plaintiff does not seek a foreclosure of either mortgage. She has never sought such foreclosure. She merely wants a right of redemption from a judicial and not a statutory sale where the statute gives no such right of redemption.

Complaint is next made that the sale as ordered deprives the bondholders of the right to apply the indebtedness to the purchase of the property. Any condition which would allow them to apply the indebtedness on the purchase price would deny them the position of redemptioners because only the creditor who forces the sale, that is, the one under whose judgment the sale is made, can apply his indebtedness on the purchase price. One cannot redeem by crediting an indebtedness on the price. He must pay cash to redeem. The court order expressly permits the bidder, if a bondholder, to pay his bid in bonds subject only to these two requirements: (a) That the obligations having priority over the bonds and not assumed by the purchaser shall be paid in cash. They, being in the nature of costs of the proceedings and sale, must needs be paid in cash even in foreclosure proceedings; (b) Such additional amount must be paid in cash as would pay to other bondholders of the same issue of bonds their proportion of the purchase price if they were not in as one of the purchasers. This is only in accordance with the well established principle of law that if the trustee forecloses he only may bid and take credit for his judgment or deter-

mined indebtedness on the purchase price. Another purchaser could not do so. If foreclosure were instituted, not by the trustee but by one or more bondholders they must bring the action for all bondholders similarly situated and protect the interest of the others, the same as the trustee must do. *Chicago D. & V. R. Co.* v. *Fosdick,* 106 U. S. 47, 1 S. Ct. 10, 27 L. Ed. 47; *Morgan's R. & S. S. Co.* v. *Texas Cent. R. Co.,* 137 U. S. 171, 11 S. Ct. 61, 34 L. Ed. 625; *Guaranty Trust & S. D. Co.* v. *Green Cove R. Co.,* 139 U. S. 137, 11 S. Ct. 512, 35 L. Ed. 116; *Farmers' Loan & Trust Co.* v. *Chicago & A. Ry. Co.,* C. C., 27 F. 146; *Lowenthal* v. *Georgia Coast & P. R. Co.,* D. C. 233 F. 1010; *Brown* v. *Denver Omnibus & Cab Co.,* 8 Cir., 254 F. 560; *Omaha Hotel Co.* v. *Wade,* 97 U. S. 13, 24 L. Ed. 917; *Toler* v. *East Tenn. V. G. R. Co.,* C. C. 67 F. 168; *Cochran* v. *Pittsburg S. & N. R. Co.,* C. C., 150 F. 682; *Wheelwright* v. *St. Louis N. O. & O. C. & Transportation Co.,* C. C., 56 F. 164; Tracy, "Corporate Foreclosures," Sec. 6, Sec. 25, and Sec. 37; *First Nat. Fire Ins. Co.* v. *Salisbury,* 130 Mass. 303; *Hackensack Water Co.* v. *De Kay,* 36 N. J. Eq. 548; *Pennock* v. *Coe,* 23 How. 117, 16 L. Ed. 436; *Commonwealth* v. *Susquehanna, etc., R. Co.,* 122 Pa. 306, 15 A. 448, 1 L. R. A. 225; *New Orleans Pac. R. Co.* v. *Parker,* 143 U. S. 42, 12 S. Ct. 364, 36 L. Ed. 66; *Wabash R. Co.* v. *Adelbert College,* 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; *Id.,* 208 U. S. 609, 28 S. Ct. 425, 52 L. Ed. 642. If they would bid on the property the whole purchase price must not be paid with bonds, but only the proportion thereof represented by the bonds held by such purchaser as compared with the total of such bonds outstanding or rather the amount distributable on such bonds after deduction of costs, allowances and prior liens. *Ketchum* v. *Duncan,* 96 U. S. 659, 24 L. Ed. 868; *American Waterworks Co.* v. *Farmers' Loan & Trust Co.,* 8 Cir., 73 F. 956; *Toledo St. L. & K. C. R. Co.* v. *Continental Trust Co.,* 6 Cir., 95 F. 497; *Continental Trust Co.* v. *Toledo St. L. & K. R. Co.,* C. C., 86 F. 929; Tracy, "Corporate Foreclosures," Secs. 209 and 210; *Grape Creek Coal Co.* v. *Farmers' Loan & Trust*

*Co.,* 7 Cir., 63 F. 891. And by either of these rules the indebtedness could, under the order of the court, be properly applied upon the purchase price. Analysis of the statutes and the order of the court therefore leads to conclusions against plaintiff.

MOFFAT, Justice (dissenting).

Words inadequately express the vigor of my disagreement with my brethren of the court, not so much upon the grounds stated, but upon matters as they appear to me more fundamental and portentous.

Dissenting opinions do not express what the law is, but what the dissenter thinks it should be. They are seldom read. Generally they are written only when the application of a principle creates a difference of judicial opinion.

In the present instance, I entertain a hope that some one interested in securing title to the property in question will read this dissenting opinion. If he does and at some future time he finds uncertainty in his title or other difficulties more alarming, he may not be able to say there was no warning. The shield of an innocent purchaser for value will at least have some holes through which warnings cannot be said to have missed the mark entirely.

The opinion of the court confirms an order that to me cuts across all the fundamental rights and relationships of a valid contract. The authority of the court to appoint a receiver is one thing. That authority is found in Sec. 104-20-1, R. S. U. 1933. The power and authority of receivers under the direction of the court is quite another. The powers of receivers are enumerated in Sec. 104-20-5, R. S. U. 1933. It is there said:

"A receiver has, under the direction of the court, power to bring and defend actions in his own name as receiver; to take and keep possession of the property, to receive rents, to collect debts, to compound for and compromise the same, to make transfers and generally to do such acts respecting the property as the court may authorize."

There are only six sections in the R. S. U. 1933 under the heading of "Receivers." In many respects they are delightfully indefinite and sweepingly general in their provisions. The last of the six sections contains one of the limitations. It reads:

"Funds in the hands of a receiver may be invested upon interest, by order of the court; but no such order can be made, except upon the consent of all parties to the action." R. S. U. 104-20-6, 1933.

About February 1, 1933, in an action brought by Crowley-Anderson Company against the Bamberger Electric Railroad Co., upon an unsecured debt, the defendants, Bamberger and Bower, were duly appointed receivers for the purpose of operating the Bamberger Electric Railroad Company. The application for the appointment of the receivers was made by the creditor, but the Railroad Company admitted its inability to pay its debts and consented to the receivership. Since then the receivers have operated the railroad under order of the court.

After about five years of operation, the receivers asked for an order authorizing the sale of the property constituting the railroad and all of its assets as a single unit, *free of liens and without right of redemption.*

All of the property of the Railroad Company is subject to the liens of two deeds of trust, or mortgages, executed in 1909 and 1927, respectively, to secure the payment of bonds. The first mortgage or deed of trust was dated February 1, 1909, and ran to the Harris Trust & Savings Bank of Chicago, Illinois, as trustee to secure an authorized issue of $2,000,000 of twenty-five year 5% first mortgage bonds, due February 1, 1934. Bonds aggregating $1,500,000 par value were issued and sold under this trust deed and are now outstanding. The plaintiff is the owner of $3,000 of such bonds with interest coupons due February 1, 1933, and subsequent. These bonds are in default as to principal and interest. It does not appear that any proceeding has been initiated to foreclose or in any way determine rights of mort-

gagees or bondholders under this mortgage. The contract lien against the property is apparently still subsisting and is definitely recognized, except as the order of the trial court attempts to set it aside.

In 1927 a second mortgage and deed of trust covering all the property of the Railroad Company and to secure a contemplated issue of second mortgage six per cent bonds of the Railroad Company, was executed to the Tracy Loan & Trust Company, of Salt Lake City, Utah, as trustee. One hundred and fifty thousand dollars ($150,000) par value of these bonds, known as Series B. Gold Bonds, are outstanding, of which the plaintiff owns $2,000 with interest coupons due January 6, 1930, and subsequent. These bonds are likewise in default. No foreclosure of this mortgage has been initiated.

Thus, all of the property and assets of the Railroad Company were at the date of the receivership, and still are, subject to the first lien of $1,500,000 first mortgage bonds with accrued and unpaid interest, and to the second lien of the $150,000 of Series B Gold Bonds, outstanding with the accrued and unpaid interest.

Upon the filing of the petition asking authority to sell the assets, the defendant, Judge Schiller, entered an ordered directing that notice of the filing of the petition be given by serving notice upon the parties to the action, by mailing notice to certain non-resident creditors whose claims were listed, and by publishing notice in the Salt Lake Tribune once a week for six consecutive weeks prior to the hearing. The bondholders as such, were not served with notice and received none, except such constructive notice as was given to the trustees under the deeds of trust.

Subsequently, and before the hearing upon the petition of the receivers, the Harris Trust & Savings Bank, trustee under the first mortgage deed of trust, and the Tracy Loan & Trust Company, trustee under the second mortgage deed of trust, filed petitions in the receivership court and asked that the property be sold as prayed by the receivers, and

that the liens of the respective bonds be transferred to the proceeds of the sale. By what authority the trustees assumed to waive the mortgagees' or bondholders' liens does not appear. A trustee under the ordinary deed of trust has authority only to foreclose the mortgage or cancel or reconvey the mortgaged or trust property upon payment.

On March 23, 1938, the day set for the hearing, the court heard testimony on behalf of the petitioners and made findings of fact in which he found, inter alia, that (a) All of the assets of the railroad were used in connection with its railroad operation and were necessary parts of an operating unit; (b) An emergency existed requiring a speedy sale of the property and assets without appraisal as a single unit, without right of redemption and free and clear of all liens and encumbrances; displacing all existing liens (including the liens of the first and second mortgage bonds) and transferring the same to the proceeds of sale in order of their respective priorities, subject only to the compensation for the receivers and the fees of their attorneys. The order also contained other provisions as to bidders, payments, etc., at the proposed sale. The plaintiff here was not a party to the receivership suit and did not participate in the hearing on the petition.

The question involved in this case, as stated by plaintiff, is:

"Does the court, in receivership cases of public utility properties, have the power to displace existing liens, and to sell the property through the receivers, free and clear of all right of redemption, in the absence of or lacking notice to and consent of the bondholders?"

It is argued that the power and jurisdiction of the court to give validity to the order made is sought to be justified by Section 104-20-5 of R. S. U. 1933:

"A receiver has, under the direction of the court, power to bring and defend actions in his own name as receiver; to take and keep possession of the property, to receive rents, to collect debts, to compound for and compromise the same, to make transfers and generally to do such acts respecting the property as the court may authorize."

What has this to do with determination of contract relationship properly established, priority of liens, secured or non-secured claims? These power given to receivers must relate to property free from mortgage liens, or other contractual ties or priority rights. No mention is made of encumbered property or property subject to mortgage or other liens. The question involved here is not the power of a receiver, it is the authority of the court.

A receiver takes possession of the property, in the place of the owner as an agent of the court for the purpose of administering the estate in the interest of creditors. We find nothing in the statute or elsewhere that brings about a cancellation or obliteration of valid existing liens on the specific property by contract subjected thereto in the event of the appointment of a receiver. A receivership proceeding in many of its aspects is analagous to a proceeding in bankruptcy. 8 C. J. S., Bankruptcy, § 242, page 866, reads as follows:

"The rights of the valid lienholder remain unimpaired, he does not become a party to the bankruptcy proceedings by reason of the bankruptcy court taking possession of the property subject to his lien, and he is entitled to enforce his lien according to the terms of the agreement under which it was acquired, and to be paid the full amount secured by such lien out of the property or its proceeds before any part thereof is applied to the payment of the claims of general creditors, and if there is not enough to pay the full amount of the lien he is entitled to the entire proceeds or fund."

In the case of *Ritter* v. *Arizona Cattle Co.,* 34 Ariz. 278, 271 P. 25, the court had before it a request on the part of a receiver for an allowance of expenses for carrying on and preserving the property, and, seeking to defeat a mortgage lien, an action had been brought by leave of court to foreclose the mortgage. The mortgagee is the appellant. In denying the receiver these expenses, the court used the following language [page 26]:

"In other words, the receiver used the mortgagee's property to preserve it and used the mortgagee's property in an effort to show that

it was not the mortgagee. The former was permissible but hardly the latter. * * * It was no part of his duty to take sides as between these [secured and unsecured creditors] any more than it would have been the duty of the debtor, in the absence of a receivership, to take sides between them. * * * There was never any question as to the legality of the mortgage as between the mortgagor and the mortgagee or its assigns * * * and since the receiver stepped into the mortgagor's shoes he was as duty bond to acknowledge its validity and binding effect as the mortgagor was."

From a full page of cited cases from the federal courts and from between 30 and 40 other jurisdictions, 53 Corpus Juris 102 has deduced the following rule:

"The general rule is that the appointment of a receiver does not divest valid pre-existing liens, but that the receiver takes the property in the same plight and condition and subject to the same equities and liens as existed against it in the hands of the person or corporation out of whose possession it was taken."

Following the text just quoted, there seems to be a limitation as to when the rule might be invoked to the prejudice of the insolvent's creditors. A Michigan case is cited, which, however, does not seem to support the exception suggested.

In the instant case the application alleges, and it is admitted by the defendant, that plaintiff is the holder of first and second mortgage bonds, secured by valid liens imposed by mortgage or trust deeds against the entire property of the railroad company. These bonds are subsisting and valid obligations, and, through the medium of a trust deed, the plaintiff is in effect a holder of negotiable, contractual instruments secured by first and second mortgages respectively against the property described as that of the corporation. When these mortgages or deeds of trust were executed and the bonds issued, they were made to secure bond purchasers for the money paid to the corporation. Those purchasers are mortgagees and acquired all the rights granted by the laws of Utah to a mortgagee of property. One of the acquired rights was the right to have the property held as security sold as provided by law and have the proceeds applied to the

payment of the secured obligations. Section 104-57-7 of the Revised Statutes of Utah, 1933, provides:

"A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale."

It is difficult to comprehend how a mortgage lien, created by a valid contract, can be set at naught through the medium of a receivership. This matter is still further emphasized by the provisions of Sec. 104-55-1, R. S. U., 1933, which has been many times referred to by this court. It is there provided that:

"There can be but one action for the recovery of any debt or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter. Judgment shall be given adjudging the amount due, with costs and disbursements, and the sale of the mortgaged property, or some part thereof, to satisfy said amount and accruing costs, and directing the sheriff to proceed and sell the same according to the provisions of law relating to sales on execution, and a special execution or order of sale shall be issued for that purpose."

And under the provisions of Section 104-55-2, R. S. U., 1933, after the entry of judgment of foreclosure, the issuance of order of sale and a sale made by a sheriff who is required to make his return to the court, it is provided that:

"If it appears from the return of the officer making the sale that the proceeds are insufficient and a balance still remains due, judgment therefor must then be docketed by the clerk and execution may be issued for such balance as in other cases; but no general execution shall issue until after the sale of the mortgaged property and the application of the amount realized as aforesaid."

Where no foreclosure of the mortgage lien has been had, no deficiency judgment can be entered,—there being no pending suit nor judgment of foreclosure upon the mortgage. What becomes of the principle that upon any secured debt the security must be first exhausted or accounted

worthless without fault of the mortgage holder before he may secure a judgment upon the debt?

The procedure in "Redemption on Sales Under Trust Deeds" is outlined in R. S. U., 1933, Section 104-37-40, and reads as follows:

"Upon a deed of trust made to secure the payment of money, all real estate, including shares of corporate stock evidencing title to a water right used, or intended to be used, or suitable for use, on the land covered by such trust deed, which may be sold by the trustee according to the terms of such deed of trust, and which shall be bought in at such sale by the cestui que trust or his assignee, or by any other person, *shall be subject to redemption by the grantor in the deed of trust*, or his executors, administrators or assigns, *or any legal redemptioner*, at any time within six months from the date of the sale, on payment of the debt and interest secured by such deed of trust, and all legal charges and costs incurred in making the sale up to the time of redemption; and on such sale the trustee shall issue to the purchaser a certificate setting forth the property sold and the amount of purchase money received, and, at the expiration of said six months, such trustee shall issue a deed to the legal holder of such certificate. Upon the death, resignation or removal from the state of such a trustee, or his refusal or inability to act from any cause, the sheriff of the county in which the real estate is situated shall become the successor in trust of such trustee." (Italics added.)

What purpose can there be in discussing the rights of a redemptioner or quoting statutes relating thereto, if none of the statutes relating to foreclosure are considered, but are cast aside by a mere order of the court to sell all the property and transfer the lien to the proceeds of the sale?

The provisions of the laws of the state of Utah relating to mortgages become a part of the contract between the railroad company issuing the bonds, the trustee and the bondholders, as much as between any other mortgagor and mortgagee, there being no exception under the statute.

In so far as these proceedings are concerned, the two trust deeds are not before the court and we are not advised as to the terms and conditions thereof. The demurrer, however, admits that the Railroad Company had issued to the Harris Trust & Savings Bank, and the Tracy Loan & Trust Com-

pany, as trustees, first and second mortgages or deeds of trust. The order of sale made by the court, which is a part of the petition, also indicates that there are first and second mortgage bonds which are liens created prior to the receivership.

In view of the provisions of the law and the admissions made in the pleadings, it is inconsistent with the very fundamentals of the contractual provisions and rights of the mortgagees thereunder, if not of the mortgagor, to attempt to pass a clear and unincumbered title to a purchaser without a proper procedure by which the contract provisions are made effective and the liens so created extinguished. Can it be said that by the mere interposition of a receiver, a mortgagee of public utility or other property can, by an order of court, be left empty-handed, with his mortgage and debt still possessed, and unable to proceed against the property given to secure the obligation? By what authority, over the objection of a mortgagee, may a court transfer his lien from whiteacre to blackacre or any other acre?

The order transferring the lien from the mortgaged property itself to the proceeds of a sale, with no pending action in foreclosure, seems too arbitrary to merit discussion. These two obligations, the trust deeds or mortgages, whichever they may be denominated, were obligations given to secure a bond issue, and constitute an obligation binding the company and its property.

Federal and state constitutions forbid the impairment of the obligations of contracts, hence the terms thereof must be respected. The rights of the bondholders under the obligations, cannot, without their consent, be altered by subsequent legislation or decrees of the courts. Article 1, Sec. 10 of the Federal Constitution, U. S. C. A. Const. art. 1 § 10, and Article 1, Sec. 18 of the Constitution of the State of Utah, forbidding the impairment of the obligations of contracts, emphasize not only their application to the legislative department of the government, but also their application to the judicial department when a principle like that herein in-

volved is in issue. Whence comes the authority, common law or statutory or equitable, which empowers courts to exercise functions prohibited by the constitutions or falling within constitutional inhibitions?

In the case of *Philadelphia Trust Co.* v. *Northumberland County Traction Co.*, 258 Pa. 152, 101 A. 970, the court had a similar question before it, in which, however, there was involved a merger of three prior existing companies, each of which had, during its separate existence, secured bond issues by a mortgage or deed of trust upon all of its properties then or thereafter to be acquired. The three trustees filed petitions in the receivership court asking leave to foreclose their mortgages upon the separate property given as security upon each property. The receivers resisted and asked authority to sell the property as a unit divested of existing liens. The Pennsylvania court in considering the question put the matter interrogatively as follows [page 973]:

"Can the court decree a sale of the merged road as a unit by the receivers, divested of the lien of the underlying mortgages of the constituent companies?"

The court then held that such a sale would defeat the contractual rights of the bondholders, since the receivers simply stood in the shoes of the owners and took the property and handled it subject to all existing liens. The Pennsylvania case, supra, cites and quotes the case of *Kneeland* v. *American Loan & Trust Co.*, 136 U. S. 89, 10 S. Ct. 950, 34 L. Ed. 379. That case involved, among other things, the right of appeal by a purchaser at a foreclosure sale, and considered generally the question of the *effect of the appointment of a receiver*. The court said [page 953]:

"The appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. * * * One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. * * * We emphasize this fact of the sacredness of contract

liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

In the proceeding before the district court, neither the trustees under the deeds of trust nor the bondholders were actual parties. It is true that the trustees joined in the application of the receivers for the order of sale which is here sought to be prevented. The interposition of a trustee in a mortgage or deed of trust is a convenient way in which the mortgagee or mortgagees may be represented. The trustee has no vested interest in the property or the debt secured thereby. His agency and functions are prescribed in the mortgage or trust instrument. It would be an astonishing provision and one that would prevent totally a recovery by the mortgagee or beneficiary, if a trustee were authorized to cancel the mortgage or trust deed or release the same without payment and over the protest of such mortgagees or beneficiaries under the trust deed or mortgage. If such could be done, as well say the trustee could sell the security, waive the lien, or so dispose of the rights of bondholders as to deprive them of the right to have their mortgages foreclosed upon default, and without payment. In view of the admitted priority of liens in the instant case, until the documents creating those liens have been disposed of in a proper judicial proceedings for that purpose, those priorities and liens subsist against the property, according to the terms of the contract between the parties. If the trustees chose to petition the court to make the receiver a defendant in a foreclosure proceeding, it would clearly be the duty of the court to permit such action and to preserve the priority of liens and other claims, and the receiver would stand in no better position as to that matter than the mortgagor.

We are aware that there are cases holding differently, and many of them hold that the ordinary and usual redemption statutes do not apply to judicial sales of railroad properties. The case of *Hammock* v. *Farmers' Loan & T. Co.*, 105 U. S. 77, 26 L. Ed. 1111, and other cases to be found in the notes

and elsewhere, present that side of the situation. An examination of the cases reveals that in many of them the mortgages were either being foreclosed or were brought into the actions. It is unnecessary here to either cite or distinguish and classify the cases. The contract of the parties relating to the mortgage of property, reading into the contract the statutory provisions, warrants no such action as is proposed in the instant case.

"There can be but one action for the recovery of any debt or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter." (Section 104-55-1, R. S. U. 1933).

The mortgages or trust deeds should be properly foreclosed by the mortgagees, or trustees on their behalf, and proper recognition of the claims of secured and unsecured creditors should be given without attempting any short cut by selling the property as a whole. The declaration of the court that such a sale shall clear the property of the mortgagor of all liens and encumbrances, in my opinion, does not make it so.

The case of *Oldroyd* v. *McCrea,* 65 Utah 142, 235 P. 580, 40 A. L. R. 230, is different in its facts from the case at bar. In that case an order was entered ex parte and the mortgagees or trustees did not consent. The case also involved the question of receivers' certificates—this court indicating that such a sale could not be permitted, in that it had the effect of displacing the mortgage and security.

The bondholders are entitled to their day in court and the right to have their liens enforced and have the property sold pursuant to the law and their mortgages considered as provided by the statute.

The writ should be made permanent.